## State v. Montgomery
[Cite as 5 AOA 290]

*Case No. 89AP-1355*
*Franklin County, (10th)*
*Decided August 30, 1990*

*Michael Miller, Prosecuting Attorney, and Katherine J. Press, for Appellee.*

*Nina M. Najjar and James H. Banks, for Appellant.*

BRYANT, J.

Defendant-appellant, Kim Montgomery, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of two counts of possession of a controlled substance in violation of R.C. 2925.11.

On December 21, 1988, the Franklin County Sheriff's Department conducted a search of the residence at 97 Rumsey Road. On arrival, the deputies found John Upton and defendant in the house. The search revealed, among other items, a purse in which was found a Tylenol bottle containing pills.

Many of the items collected during the search were forwarded to the Bureau of Criminal Identification and Investigation for analysis; and the contents of the Tylenol bottle were found to contain amobarbital and secobarbital, both Schedule II controlled substances. As a result, defendant was indicted on two counts of possession or use of Schedule II controlled substances in violation of R.C. 2925.11. Following a jury trial, the defendant was found guilty of both counts, and sentenced thereon.

Defendant appeals therefrom, setting forth four assignments of error:

"I. The trial court erred in refusing to dismiss the indictment for the state's failure to bring the defendant to trial within the statutory time.

"II. The trial court erred in refusing to grant a mistrial and/or failing to dismiss the charges against defendant-appellant on the basis of police/prosecutorial misconduct.

"III. Defendant's conviction is manifestly against the weight of the evidence and must be overturned.

"IV. Defendant-appellant was improperly convicted of two offenses and improperly subjected to multiple punishment for the same crime."

In her first assignment of error, defendant contends that the trial court erred in failing to dismiss her case for failure to bring her to trial within the time periods prescribed under R.C. 2945.71(C).

Defendant initially was arrested on December 21, 1988 and charged with drug abuse in knowingly possessing two unit doses of a Schedule II controlled substance, in violation of R.C. 2925.11(A). A bond hearing was held the next day, and defendant was released from jail. On January 4, 1989, the drug abuse charge was dismissed for future direct indictment. On June 2, 1989, the indictment was filed charging defendant with two counts of drug abuse.

Trial originally was scheduled for September 14, 1989, but was continued at the court's initiative to allow the trial judge to attend the National Judicial College from September 16 through September 24. Accordingly, trial was rescheduled for September 25, 1989, the trial court's "first available opportunity" for trial.

R.C. 2945.71(C) provides:

"A person against whom a charge of felony is pending:
"***
"(2) Shall be brought to trial within two hundred seventy days after his arrest."

As defendant notes, R.C. 2945.72 provides some exceptions to the language of R.C. 2945.71(C), but none of those exceptions apply herein. Defendant, however, concedes that her case should be dismissed under R.C. Chapter 2945 only if the time period from January 4, 1989 to June 2, 1989, that is the time period from the dismissal of her original charges to the filing of the indictment, are counted in calculating the two hundred seventy days allowed under R.C. 2945.71(C).

Disagreeing with defendant's contentions, the trial court relied on *State v. Bonarrigo* (1980), 62 Ohio St. 2d 7, wherein the Supreme Court refused to count under R.C. 2945.71 the time period between dismissal of misdemeanor charges and a subsequent felony charge arising out of the same activity. Defendant argues that *Bonarrigo* is not dispositive, as, contrary to *Bonarrigo*, defendant herein was charged with precisely the same offense both in the original charges and in her subsequent indictment. Moreover, defendant seeks to distinguish *Bonarrigo* because the original charges therein were dismissed, whereas defendant's original charges herein were dismissed for future indictment. As a result, defendant asserts that she was subject to continuing humiliation in the community due to the continuing nature of the proceedings against her. By contrast, the state contends that, however defendant may present the facts, she had no charges pending against her from January 4, 1989 until the indictment was filed on June 2, 1989; and therefore that time period should not be counted in calculating the two hundred seventy days specified under R.C. 2945.71.

In *State v. Woods* (June 16, 1988), Franklin App. No. 87AP-736, unreported (1988 Opinions

2159), this court considered similar circumstances, in that defendant therein was originally charged with murder; defendant waived his right to a preliminary hearing, was bound over to the Franklin County Grand Jury for further proceedings, and was released on a $10,000 recognizance bond. The grand jury, however, returned a no bill. Subsequently, defendant therein was indicted on one count of murder with a firearm specification. In discussing the speedy trial aspects of his case, this court stated that "the provisions of the Ohio speedy trial statutes are not applicable when no charges are pending against an accused. *** " *Id.* at 2161. Following *Woods*, we similarly find that the time period during which defendant had no charges pending against her should not be counted in calculating the speedy trial requirements under R.C. 2945.71. Defendant's first assignment of error is overruled.

In her second assignment of error, defendant contends that the trial court erred in refusing to grant a mistrial or to dismiss the charges against her on the basis of the state's failure to provide relevant information during discovery.

The search of 97 Rumsey Road produced an inventory listing the various items taken from the premises. Twenty of those items were then submitted to the Bureau of Criminal Identification and Investigation ("BCI"). Number ten on the analysis list from BCI was a "brown prescription bottle containing two blue-orange capsules, two white pills, one blue pill." Number fourteen on the list was the above-mentioned Tylenol bottle containing two red and blue capsules, two Propacet, six Seldane, three off-white pills, and one pill marked "Wallace." Originally, defendant apparently understood that the charges against her were premised on the Tylenol bottle found in the purse. However, during pretrial discovery and conferences, the state's assistant prosecutor indicated that the case against defendant was based on item number ten, the brown -prescription bottle found in a dresser drawer; and in discovery, the state produced to defendant only the analysis of the pills found in the brown bottle.

During trial, the assistant prosecutor discovered his error. At that time, apparently based on argument from defendant's counsel, the state advised defendant that the case against her was premised not on the pills found in the brown bottle, but on those items found in the Tylenol bottle, item number fourteen. At that point, then, defendant realized that the analysis given to her before trial was not the analysis on which the

trial would be based; that the Tylenol bottle found in the purse contained the drugs she allegedly possessed.

As a result of the foregoing, defendant urged the trial court to dismiss the charges against her, or in the alternative, to declare a mistrial. While the trial court refused to dismiss the charges, the trial court was concerned that, as defendant contended, she did not have the opportunity to independently analyze the pills subject of the charges against her.

Given defendant's contention, the trial court continued the trial to allow defendant to obtain a chemist and to independently analyze the contents of the pills found in the Tylenol bottle. The record contains nothing to suggest that defendant was unable to complete whatever analysis she contemplated within the time the trial court allowed.

The trial resumed with the examination of one of the deputies who searched the premises. The deputy indicated that on finding the purse in the residence, she asked defendant if the purse was hers; defendant replied affirmatively. Before the witness answered, defendant objected, contending that in discovery she had requested a summary of any statements she made. The conference on defendant's objection indicated that defendant knew well before trial of her purported admission; her objection was based solely on the fact that the statement was never provided to her in writing. The trial court overruled the objection and allowed the witness to answer as indicated above.

Given the foregoing, the contentions of defendant's second assignment of error concerning police or prosecutorial misconduct relate to two aspects of the proceedings, the BCI report containing the analysis of the pills in the Tylenol bottle defendant allegedly possessed, and the summary of the statement defendant allegedly made to the deputy during the search.

As to the first aspect, defendant contends the trial court erred in not declaring a mistrial, given the state's failure to produce the lab report and analysis until midway through the trial. The trial court has discretion to determine which of the sanctions enunciated in Crim. R. 16 should be applied in situations of this nature. *State v. Finnerty* (1989), 45 Ohio St. 3d 104, 107. We find no abuse of discretion in the trial court's handling of the lab report and analysis. Specifically, upon learning that defendant did not have the opportunity to independently analyze the pills she purportedly possessed, the trial court ad-

journed the trial, giving defendant that opportunity. While defendant contends that, without the analysis, she was not able to prepare her defense, that argument may be asserted in virtually every instance where the prosecution has failed to produce relevant evidence. Nonetheless, Crim. R. 16 does not mandate mistrial in each such instance, but allows the trial court discretion to determine the appropriate sanction. In short, the trial court appropriately adjourned the trial, giving defendant the opportunity to conduct independent analysis of the pills at issue, and resumed trial with defendant's analysis completed.

Defendant's statement is more problematic. As noted above, when the state elicited testimony regarding defendant's statement that the purse containing the pills was hers, defendant objected. However, in objecting, defendant does not contend that she was unaware of the statement prior to trial; rather, she objected to the state's failure to produce the statement to her in writing. On that basis, alone, we find no prejudicial error.

However, the significance of defendant's admission was not apparent until defendant learned at trial that the state's case rested not on the pills found in the brown bottle in the dresser drawer, but on the pills found in the Tylenol bottle in defendant's purse. At that time, defendant moved for a mistrial, or that the charges be dismissed, for the state's failure to produce the correct lab analysis. Defendant also specifically should have requested, as she urges on appeal, that, in the alternative, her statement be suppressed for failure to administer the appropriate *Miranda* warnings.

We are reluctant to conclude that the trial court, faced with defendant's motion for a mistrial or dismissal of charges, should have perceived that motion to include a motion to suppress defendant's statement, especially considering the fact that defendant's motion for mistrial related to the state's failure to produce the appropriate lab report. By the same token, however, we are hesitant to conclude that defendant waived her right to seek suppression of her statement, a procedure properly undertaken before trial, since under these circumstances the relevance of the statement could not be fully appreciated until trial proceedings had begun. On balance, we find the appropriate remedy is to remand this matter and to allow the trial court to conduct a hearing to determine whether or not defendant's statement properly should be suppressed. In the event the trial court determines that the statement is not to be suppressed, the judgment of the trial court, insofar as the second assignment of error is concerned, is affirmed. However, if the trial court determines that the statement properly should have been suppressed, then defendant is entitled to a new trial.

As a result, to the extent set forth above, defendant's second assignment of error is sustained.

In her third assignment of error, defendant contends that her conviction is against the manifest weight of the evidence.

Preliminarily, we note the test for determining the sufficiency of the evidence "is whether reasonable minds can reach different conclusions on the issue of whether the defendant is guilty beyond a reasonable doubt." *State v. Black* (1978), 54 Ohio St. 2d 304. Further, in reviewing a case to determine whether the verdict is against the manifest weight of the evidence, we reverse the judgment of the trier of fact only where reasonable minds could not fail to find reasonable doubt. *State v. Antill* (1964), 176 Ohio St. 61, paragraph five of the syllabus. In each instance, the weight to be given to the evidence and determinations as to credibility of witnesses are matters primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, paragraph one of the syllabus.

Applying the foregoing parameters to the evidence before us, we find the judgment of the trial court to be supported by the evidence. Specifically, defendant and John Upton were at the house at 97 Rumsey Road, where Franklin County sheriff deputies were executing a search warrant. Finding a purse having a Tylenol bottle with pills, one of the deputies asked defendant whether the purse belonged to her, and she admitted that it did. The pills were ultimately examined and found to contain Schedule II substances, amobarbital and secobarbital.

In response, noting that the evidence against her is primarily circumstantial, defendant argues under *State v. Kulig* (1974), 37 Ohio St. 2d 157, that her conviction is improper, as the evidence is not irreconcilable with any reasonable theory of innocence. In particular, defendant apparently contends that, while the purse was hers, that fact does not prove that she knowingly possessed the drugs contained in the Tylenol bottle therein, as someone else could have placed those drugs in her purse without her knowledge. While defendant's contentions may present a possible scenario of how the drugs came into her posses-

sion, it does not present a reasonable one under *Kulig, supra.* See, e.g., *State v. Dobbins* (Oct. 30, 1986), Franklin App. No. 86AP-388, unreported (1986 Opinions 2867) and *State v. Vance* (Jan. 20, 1977), Franklin App. No. 76AP-662, unreported (1977 Opinions 159). Defendant's third assignment of error 15 overruled.

In her fourth assignment of error, defendant contends that the trial court erred in convicting her of two offenses and punishing her twice for the same crime, possession of Schedule II narcotics. Initially, relying on *Blockburger v. United States* (1932), 284 U.S. 299, defendant contends that her conviction on both counts of drug abuse based on two unit doses containing Schedule II drugs is in violation of the double jeopardy clause of the United States Constitution. However, *Blockburger* is "a rule of statutory construction" that is not controlling here, given the clear indication of legislative intent in R.C. 2941.25 "to permit cumulative sentencing for the commission of certain offenses." *State v. Bickerstaff* (1984), 10 Ohio St. 3d 62, 66, [1]

R.C. 2941.25 states as follows:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In *State v. Blankenship* (1988), 38 Ohio St. 3d 116, the Supreme Court established a two-part test for determining whether a court may convict a defendant of multiple offenses:

"*** In the first step, the elements of the two crimes are compared. If the *elements* [emphasis added] of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes' are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each

crime, the defendant may be convicted of both offenses. *** " *Id.* at 117.

If a person can commit one of the two offenses without committing the other, the offenses are not allied offenses of similar import under the first part of the test. See *State v. Mughni* (1987), 33 Ohio St. 3d 65, 68; *State v. Blunt* (Aug. 31, 1989), Franklin App. No. 88AP-933, unreported (1989 Opinions 3111, 3118-3119).

We conclude, under the first step of *Blankenship*, that the simultaneous possession of different Schedule II drugs are dissimilar offenses. The elements of the two offenses do not correspond to such a degree that commission of one offense will necessarily result in the commission of the other, because each count of drug abuse requires proof of a different element, namely, the controlled substance. *State v. Headley* (1983), 6 Ohio St. 3d 475.[1] R.C. 2941.25(B) provides that the defendant may be convicted of two or more offenses of dissimilar import. The two drug abuse counts are offenses of dissimilar import. See *State v. Sondurant* (Dec. 19, 1985), Franklin App. No. 85AP-427, unreported (1985 Opinions 3690), citing with approval *State v. Jennings* (1987), 42 Ohio App. 3d 179. We therefore overrule defendant's fourth assignment of error.

Having overruled the first, third, and fourth assignments of error, but having sustained the second assignment of error to the limited extent set forth above, we modify the judgment of the trial court accordingly, and remand this cause for further proceedings in accordance herewith.

*Judgment modified and*
*cause remanded.*

BOWMAN, J., concurs.
WHITESIDE, J., concurs in part and dissents in part.

WHITESIDE, J., concurring in part and dissenting in part.

Being unable to concur in the majority opinion as to disposition of the fourth assignment of error, I must regretfully dissent even though I concur in that opinion with respect to the other assignments of error.

First, the *Blockburger* test is not the sole double-jeopardy test. See *Grady v. Corbin* (1990), ___ U.S. ___, 110 S.Ct. 2084; *Illinois v. Vitale* (1980), 447 U.S. 410, 100 S.Ct. 2260; and *Brown*

*v. Ohio* (1977), 432 U.S. 161, 97 S.Ct. 2221. Second, as the majority opinion indicates, the issue here is not double jeopardy but, rather, the application of R.C. 2941.25 which involves an even less strict standard for its application.

Although in the abstract the two crimes of which defendant was convicted *can be* committed by separate and distinct conduct, in the present case they were not. The *identical conduct* was involved in both convictions. Defendant possessed a single Tylenol bottle containing pills. Although some of the pills were amobarbital and some were secobarbital, the identical conduct of defendant was involved--possession of a bottle containing pills. The *conduct* of defendant is the same regardless of whether the pills are all identical. If each pill contained in the bottle somehow constitutes separate conduct of defendant, then it should make no difference whether the pills are different or the same since each must necessarily be identified separately. The possession of a single bottle of pills differs substantially from the situation where a defendant robs or kills two persons during the same general course of conduct, the actual robbing or killing of one person necessarily involves some separate conduct of defendant from the conduct of robbing or killing the other.

Nor can the crimes not be deemed to be of *similar* import. Clearly they are. The effect of the majority opinion is to rewrite R.C. 2941.25 to require that crimes of *identical* import be involved. It is difficult to conceive how the crime of possession of a Schedule II controlled substance can somehow not be a crime of similar import to the crime of possession of a Schedule II substance. Yet the majority holds that they are not crimes of similar import because two different controlled substances were involved. This goes beyond the *elements* of the offense. The elements of the two offenses are identical. R.C. 2925.11 defines the crime as follows: "No person shall knowingly obtain, possess, or use a controlled substance." The Supreme Court recognized this principal in the opinion of *State v. Delfino* (1986), 22 Ohio St. 3d 270, wherein it stated at 274:

"\*\*\* [W]e can conclude \*\*\* that the legislature intended the possession of the different drug groups to constitute different offenses \*\*\* . This court specifically holds that possession of a substance or substances in Schedule I or II, with the exception of marijuana, is a single and separate offense under R.C. 2925.11(C)(1)."

Here the punishment for both offenses is controlled by R.C. 2925.11(C)(1) since they are both Schedule II substances. Conviction for possession of one Schedule II substance does not require proof of any fact not required for a conviction of possession of another Schedule II substance. Rather, all that is required is proof that the defendant knowingly possessed a controlled substance which is listed on Schedule II. The required proof is that the substance possessed is listed on Schedule II. The fact that different controlled substances may be involved does not make the offense dissimilar in nature nor vary the *elements* of the offense, although the evidence may vary proving one or more of the elements. The fact that the evidence may vary does not change the *elements* of the offense.

Under any test, R.C. 2941.25(A) applies here since defendant by identical conduct and with the same animus committed two offenses of not just similar but identical import. The fact that two controlled substances were involved in what would permit two identical offenses to be charged although *Delfino, supra,* suggests that perhaps only a single offense was committed. See however, *State v. Jennings* (1987), 42 Ohio App. 3d 179, which refused to follow *Delfino* in this respect.

The majority reliance upon *State v. Headley* (1983), 6 Ohio St. 3d 475, is misplaced. *Headley did not hold* that the *"identity"* of a controlled substance is an essential element" of the crime. Rather, *Headley* held in paragraph two of the syllabus that "[t]he *type* of controlled substance involved" is an essential element under R.C. 2925.03. (Emphasis added.)

A reading of the *Headley* opinion clearly reflects that the word "type" refers to the schedule upon which the controlled substance is listed, not to the name of the substance. Otherwise, *Headley* would be meaningless since, from the name of the substance alone, one would have little more knowledge of the offense intended to be charged because the alleged schedule would remain unknown.

The identity of the substance itself involved is not an *element* of the offense of possession of a controlled substance but, rather, only *evidence* that tends to establish the critical element under *Headley* that the substance (whatever its identity or name) is listed on Schedule II. The two crimes are of identical (or at least similar) import and the identical conduct of defendant was involved. The trial court erred in sentencing upon both.

---

[1] In *State v. Headley* (1983), 6 Ohio St. 3d 475, the Supreme Court noted that "the type of controlled substance involved

constitutes an essential element *** ; and that an indictment which "neglected to state the controlled substance involved *** " was a fatal defect in an indictment "not curable by amendment."