The STATE of Ohio, Appellee,

v.

WILLIAMS, Appellant. ▮

[Cite as *State v. Williams* (1996), 117 Ohio App.3d 488.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950740.

Decided Dec. 24, 1996.

**490**

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *William E. Breyer*, Assistant Prosecuting Attorney, for appellee.

*Bryan R. Perkins*, for appellant.

PAINTER, Judge.

## I. Facts

In October 1994, postal authorities became suspicious of an express mail package which postal workers were unable to deliver to the addressee, Michael Underwood, because the house at the address appeared to be vacant. Postal inspector Martin Arthur received a positive alert on the package from a narcotics-detecting dog and obtained a federal search warrant. Upon opening the package, Arthur and Regional Narcotics Unit ("RENU") agent Thomas Lipps

discovered a substance containing cocaine that weighed 1,002.2 grams. The police replaced the cocaine with a "dummy kilo" that only weighed 800 grams.

Upon receiving inquiries from Tomeca Goodwin, postal authorities left a message on Goodwin's answering machine for her to call regarding the package. Goodwin phoned a short time later and was instructed where she could retrieve the package.

Goodwin arrived only to be told that Michael Underwood (the listed addressee), Renee Williams (the listed sender on the package), or a relative of theirs would have to claim the package. Goodwin contacted an elderly lady, who indicated that she was related to Renee Williams in California and stated that the postal inspector could release the package to Goodwin.

Goodwin stated that she then received a page from defendant-appellant Christopher Williams and spoke to him on the phone. She told Williams that they would not give her the package, and he told her to tell them to "send it back." Goodwin relayed this message and began to leave the post office. The postal inspector asked her to wait and then released the package to her. Goodwin signed for and took the package, then left the building. RENU officers arrested Goodwin in the parking lot with the package.

Goodwin told police that she was picking up the package for Williams and agreed to cooperate with the police and make taped phone calls to him while the police listened in. Two calls took place between Goodwin and Williams. Williams told Goodwin about arrangements to give the package to "Charlotte." Williams stated that he could not come to pick up Goodwin because his car was inoperable. Williams did not follow through and obtain the package.

Based on Goodwin's statements and actions, and the taped phone calls, the police indicted and arrested Williams. While incarcerated, Williams admitted to his cellmate that the cocaine in the package belonged to him.

After a trial, a jury found Williams guilty of two counts of aggravated trafficking under R.C. 2925.03(A)(9) and 2925.03(A)(2). The judge merged the two offenses as allied offenses of similar import and imposed a sentence of fifteen years to life, following *State v. Hunter* (Dec. 14, 1994), Hamilton App. No. C–940124, unreported, 1994 WL 698438, and *State v. Jennings* (1987), 42 Ohio App.3d 179, 537 N.E.2d 685. Williams has appealed his conviction in six assignments of error.

In his six assignments of error, Williams alleges that the trial court erred by (1) denying Williams's Crim.R. 29(A) motion for acquittal after the state presented insufficient evidence on the element that Williams had possession of the drugs, (2) denying Williams's Crim.R. 29(A) motion for acquittal after it was stipulated that the package retrieved by Goodwin and allegedly possessed by Williams

contained less that one hundred times the bulk amount of cocaine, (3) failing to instruct the jury properly regarding accomplice testimony under R.C. 2923.03, (4) failing to admit certified sentencing entries of drug offenses involving Michael Underwood, (5) entering judgment on guilty verdicts that were against the manifest weight of the evidence, and (6) denying Williams's motion to suppress the taped dialog between Goodwin and Williams.

## II.   Sufficiency of the Evidence

The first and second assignments of error allege that the trial court should have granted Williams's Crim.R. 29(A) motion for acquittal because the evidence was insufficient to prove the elements of possession and drug contents equal to or greater than one hundred times the bulk amount.  We discuss these assignments of error together.  R.C. 2925.03(A)(9) stated:

"(A)  No person shall knowingly do any of the following:

" * * *

"(9) Possess a controlled substance in an amount equal to or exceeding one hundred times the bulk amount[.]"

R.C. 2925.03(C) stated:

"(C) If the drug involved is any compound, mixture, preparation, or substance included in schedule I, with the exception of marihuana, or in schedule II, whoever violates this section is guilty of aggravated trafficking."

Williams alleges that he is entitled to an acquittal because the evidence is insufficient to show that he was in possession of the package, or that the package contained a controlled substance in an amount equal to or exceeding one hundred times the bulk amount when Goodwin took possession of the package.

In reviewing a Crim.R. 29 motion, we examine whether "the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.  If evidence presented would convince the average mind of the defendant's guilt beyond a reasonable doubt when believed, that evidence is sufficient. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Schaim* (1992), 65 Ohio St.3d 51, 600 N.E.2d 661.

In this case, the state does not allege actual possession, but rather constructive possession, of the package.  Constructive possession is sufficient for conviction under R.C. 2925.03.  Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. *State v. Wolery* (1976), 46 Ohio

St.2d 316, 75 O.O.2d 366, 348 N.E.2d 351. See, also, *State v. Barr* (1993), 86 Ohio App.3d 227, 620 N.E.2d 242, citing *State v. Haynes* (1971), 25 Ohio St.2d 264, 54 O.O.2d 379, 267 N.E.2d 787.

The evidence shows that Tomeca Goodwin took actual possession of the package. Goodwin testified that she picked up the package for Williams. She was Williams's agent with respect to the package. Williams directed her to get the package, and then told her what to do with it after she asked for instructions. One cannot escape criminal liability by acting through agents. The record contains abundant evidence that Williams exerted dominion and control over the package by directing his agent Goodwin, and therefore we find sufficient evidence that Williams had constructive possession of the package.

As for the amount of cocaine in the package, it arrived with over 1,000 grams of a substance containing cocaine. The police unpacked the cocaine and repacked it with a new substance containing only a small amount of cocaine that weighed only 800 grams—less than one hundred times the bulk amount.[1] While the record contains a wealth of evidence that demonstrates that Williams acted under the belief that the package was in its original condition, Williams never exerted control over the package until the police converted its contents to an amount of cocaine-laced substance that weighed less than one hundred times the bulk amount.

However, the imprecise measurement of the substituted new substance does not make the evidence insufficient to sustain a conviction under R.C. 2925.03(A)(9). The amount of contraband substituted by the police is of no consequence. This is not akin to a mistake-of-fact defense, nor is it a legal impossibility. The *actus reus* is the exercise of dominion and control over the *package*. The *mens rea* is the intent to receive over one hundred times the bulk amount. Therefore, the amount of contraband in the package over which Williams exerted constructive possession relates back to the amount in the package at the time the police made the substitution.

Otherwise, the degree of a felony can be controlled by the amount of contraband substituted by the police. The defendant might receive a windfall, or might receive an inadvertent upgrade in time. The required *mens rea* under other facts might be to receive two times the bulk amount, but the substituted amount might accidentally be three times the bulk amount. Furthermore, the *mens rea* under other facts might be to receive two times bulk that is one hundred percent

---

1. The bulk amount is ten grams—one hundred times the bulk amount is one kilogram or 1,000 grams. See former R.C. 2925.01(E)(1).

pure cocaine, but the substituted amount might contain only a trace of cocaine—something our fictional defendant would have no intention of receiving.

We hold that when law enforcement has properly intercepted a package and proves the original contents, and then substitutes a benign material, the relevant amount of contraband is that amount in the original package, and if the defendant possesses the package thereafter, a jury is entitled to conclude that the defendant constructively possessed the original contents of the package, not the substituted material. *United States v. Jackson* (C.A.6, 1995), 55 F.3d 1219, 1226.

Accordingly, we overrule Williams's first assignment of error.

### III.   Jury Instructions Under R.C. 2923.03

In his third assignment of error, Williams argues that the trial court erred by failing to properly instruct the jury on "accomplice testimony." R.C. 2923.03(D) requires the trial court to substantially state to the jury:

"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

"It is for you, as jurors, in the light of all facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

In the case at bar, the trial court stated:

"You have heard testimony from Tomeca Goodwin, another person who was accused of the same crime charged in this case and said to be an accomplice. An accomplice is one who knowing—assists—there is a mistake right there. Knowing. I'm going to have to correct that. Knowingly assists or joins another in the commission of a crime. Whether Tomeca Goodwin was an accomplice and the weight to be given to her testimony are matters for you to determine. In the event you conclude that Tomeca Goodwin was an accomplice, you may, in assessing her credibility, consider the fact and whether or not she may have special motive in testifying. Accordingly, you may choose to weigh her testimony with great caution."

Thus, the issue is whether the trial court used substantially the same language found in the statute.

In *State v. Estep* (Mar. 5, 1996), Ross App. No. 94CA2072, unreported, 1996 WL 103807, the Fourth District held that the heart of the statutory charge is that accomplice testimony is to be viewed with "grave suspicion" and "weighed with great caution," and cited other cases that require those phrases for substantial compliance with the statute (citing *State v. Tumbleson* [1995], 105 Ohio App.3d

693, 664 N.E.2d 1318; *State v. Adams* [Feb. 26, 1992], Wayne App. No. 2621, unreported, 1992 WL 36156).

In the case at bar, "weighed with great caution" is part of the instruction, but not an admonition that the testimony be viewed with "grave suspicion." Worse, the trial judge refused to give the mandatory instruction, stating, "I just don't want, by my words, to indicate to the jury that Miss Williams [Goodwin] is tainted as a witness one way or the other." When Williams's counsel pointed out the mandatory nature of the instruction, the trial judge stated: "If that's what is statutorily granted, that's in my view over the line. A judge is not supposed to trigger by his instructions or create a credibility issue or stack the cards in favor of one side or another."

The statutory directive is not optional. The legislative intent is to warn juries of the motivations that accompany accomplice testimony in a strong and uniform manner. Judges are not in a position to ignore such directives.

Be that as it may, the trial judge's instruction was very similar to the statutory directive, lacking only that Goodwin's testimony should be viewed with "grave suspicion" and substituting that the jury should "consider the fact and whether or not she may have special motive in testifying." While this slightly weakened the instructions regarding Goodwin's testimony, it conveyed the same point—that the jury should give consideration to the witness's motivations for testifying and view those motivations with suspicion and caution, because those motivations do not necessarily comport with general motivations to tell the truth.

Therefore, we hold that it was not error. The trial judge must give the instructions in "substantially" the same language found in the statute. The departure here was unfortunate, but in this case it was substantially similar. We emphasize that judges should not meddle with the instructions written in any statute, because a few more words of difference could well result in a reversal, but we overrule the assignment of error in this instance.

### IV. Sentencing Entries Regarding Michael Underwood

In his fourth assignment of error, Williams asserts that the trial court erred by not admitting copies of drug convictions involving Michael Underwood. Williams argues that the convictions "prove" that the drugs in the package were sent to Underwood. However, we fail to see how that fact would exonerate Williams from his aggravated trafficking charges. There is no element that is disproven by any "proof" that the package was sent to Underwood. Furthermore, prior offenses do not "prove" a later offense, which, as the state points out, is one reason for the existence of Evid.R. 404(B). This evidence would have little probative value and high prejudicial effect—that is, it would tend to confuse or mislead the jury away from the elements of the charged offenses. See Evid.R. 403(A). Therefore, we overrule this assignment of error.

### V. Manifest Weight of the Evidence

In his fifth assignment of error, Williams asserts that his convictions are against the manifest weight of the evidence. When considering a manifest-weight-of-the-evidence claim, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and then determine whether the jury clearly lost its way while resolving conflicts in the evidence and thereby created a manifest miscarriage of justice. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *State v. Schaim* (1992), 65 Ohio St.3d 51, 53, 600 N.E.2d 661, 664, fn. 1. Aside from the sufficiency concerns that we have already addressed in the second assignment of error, we see no evidence that demonstrates that a manifest miscarriage of justice occurred as a result of the jury verdicts. The evidence amply supports conviction on the R.C. 2925.03(A)(2) and 2925.03(A)(9) charges.

Therefore, the fifth assignment of error is overruled.

### VI. Motion to Suppress the Audio-taped Conversations

In his sixth and final assignment of error, Williams argues that the trial court erred by failing to suppress the audiotapes of the conversations between Goodwin and Williams, because Goodwin was coerced into cooperating with police.

We must look to the "totality of the circumstances" to determine whether Goodwin's consent was voluntary. See *Schneckloth v. Bustamonte* (1972), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. Goodwin testified that she allowed the police to monitor and record her conversations with Williams in regard to the package containing contraband. While Goodwin was backed into a legal corner by her participation in obtaining the package, she was under no legal obligation to permit police to monitor and tape the conversations. We find nothing in the record to suggest that her participation was not voluntary.

Consent by a party to permit police to monitor and tape a conversation is permissible under R.C. 2933.52(B)(3). Under the statute, the taped conversations were properly admitted in evidence. Accordingly, we overrule the sixth assignment of error.

### VII. Conclusion

For the reasons stated above, we overrule all of Williams's assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

MARIANNA BROWN BETTMAN, P.J., and GORMAN, J., concur.