[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Roderick Rideau appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of aggravated trafficking in drugs, sentenced him to an indefinite term of fifteen years to life, and fined him $5,000.
The state's evidence established the following version of events.
In February 1995, Linda Watson of Inglewood, California, agreed to arrange for the shipment of a 1986 Mazda 323 ("the Mazda") from California to Dayton, Ohio. Watson understood that she was shipping the car on behalf of Rideau, with whom she had grown up and who was known to her only as "Rod." Watson's brother, Earl Johnson, helped to set up this transaction. Rideau provided Watson with some suggestions for choosing a shipping company and arranged for his wife, Heather, to pay Watson for the shipping costs, plus several hundred dollars for her assistance. Although Watson did not have direct contact with Rideau when the Mazda was dropped off at her home, Watson's daughter did see Rideau leaving the car in the driveway. Watson ultimately arranged to have the Mazda shipped by Liberty Express at a cost of $649. James Fiske, the driver, loaded the Mazda onto his car carrier at Watson's home on February 24, 1995.
Per Rideau's instructions, the Mazda was to be delivered to Ellen Meeks in Dayton. Meeks knew Rideau as Ramone Baker and had been intimately involved with him for several years, spending time with him whenever he was in Dayton. Rideau told Meeks that he was having a car shipped to her from California and suggested that he might give the car to her when it arrived. Rideau informed Meeks that the car would be shipped in her name, that the truck driver would call her when the car arrived in Dayton, and that she should accept delivery of the car and then call him immediately.
Several days after leaving California with the Mazda on his car carrier, Fiske was stopped by Indiana state troopers outside of Indianapolis. The precise basis for the stop is unclear from the record, but it appears that the state troopers felt that the car or the car carrier fit some type of drug transportation profile. When questioned about his load, Fiske told the state troopers that he felt "strange" about the Mazda because he had been given the name and phone number of the person to whom he was to deliver the car in Dayton, but not the address, which was unusual. The troopers then searched the vehicle and discovered that the mat in the trunk was glued down. They removed the mat and found a concealed compartment with the door sealed shut. Inside the compartment, the troopers found nine duct-taped packages, which they believed to contain cocaine. Subsequent testing confirmed that the substance contained in the packages was cocaine and that its weight totaled over eleven kilograms.
Upon discovering the cocaine, the Indiana state troopers contacted Dayton police who agreed to cooperate with the investigation and to arrange for a controlled delivery of the Mazda to Meeks. The troopers returned two packages of cocaine to the Mazda, reloaded the Mazda onto Fiske's truck, and escorted the truck to Dayton. The other seven packages of cocaine were delivered directly to the Dayton police. The combined weight of the two packages of cocaine that were returned to the trunk of the Mazda exceeded two kilograms, an amount over one hundred times the bulk amount of cocaine.
On March 3, 1995, after the truck arrived in Dayton, Dayton Police Sergeant Michael Nolan posed as the truck driver to arrange delivery to Meeks. Meeks picked up the Mazda and returned to her home under police surveillance. Once home, Meeks paged Rideau, who immediately returned her call from an airplane. Rideau told Meeks he would pick up the Mazda or would send someone to pick it up for him, and he gave Meeks permission to use the car in the meantime. When Meeks went out in the Mazda on an errand later that night, she was stopped and arrested for drug trafficking. Watson was also arrested in the following days.
Both Meeks and Watson denied any knowledge of the cocaine in the trunk of the Mazda. Following a search of Watson's home and based on some information provided by her, California police connected the Mazda with Rideau but discovered that it was registered to someone named Carlos Montano. Rideau's photograph was included in photo arrays shown to Watson, to her daughter, and to Meeks, each of whom positively identified him as the man with whom they had dealt about the shipment of the Mazda. Rideau was arrested in Dayton in January 1996. Neither Watson nor Meeks was ever charged in connection with the cocaine.
Rideau rebutted the state's evidence by offering his wife's testimony that she had never "seen [Watson] before in [her] life" and had never given money to anyone to transport a car.
Rideau was indicted by a grand jury on one count of aggravated trafficking in over one hundred times the bulk amount of cocaine in violation of R.C. 2925.03(A)(9). Rideau pled not guilty and filed a motion to suppress evidence on the ground that the search of the Mazda in Indiana had been unlawful. The trial court conducted a hearing on the motion on July 19, 1996 and subsequently concluded that Rideau had established no legitimate expectation of privacy and thus had lacked standing to challenge the search. The trial court based its decision upon Rideau's failure to establish his ownership of or any other lawful connection with the Mazda and upon his efforts to conceal his involvement in the transactions related to the shipment of the Mazda. The matter proceeded to a bench trial in September 1997. Rideau was found guilty and sentenced accordingly.
Rideau asserts four assignments of error on appeal.
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED APPELLANT'S SUPPRESSION MOTION BECAUSE HE LACKED "STANDING."
Rideau claims that he had standing to challenge the search of the Mazda because he owned the car and had an expectation of privacy therein. Rideau further contends that even if the trial court believed that he had borrowed, rather than owned, the Mazda, he nonetheless had a recognized expectation of privacy in the vehicle.
The rights assured by the Fourth Amendment are personal rights that may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by a search or seizure. Rakas v. Illinois (1978), 439 U.S. 128, 138,99 S.Ct. 421, 428. A defendant has the initial burden of proving that a search or seizure infringed upon an interest of his that the Fourth Amendment was designed to protect before he may challenge the legality of the search or seizure. Id., 439 U.S. at 131, n. 1, 99 S.Ct. at 424, n. 1; State v. Spencer (May 18, 1990), Montgomery App. No. 11740, unreported.
One must have a legitimate expectation of privacy in the area searched to challenge the legality of the search. Rawlings v.Kentucky (1980), 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, citingKatz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507. An illegal search only violates the rights of those who have a legitimate expectation of privacy in the invaded place. Rakas,supra, 439 U.S. at 143, 99 S.Ct. at 430. Property ownership or another valid possessory interest is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, but possession of an item may not be used as a substitute for a factual finding that the owner of a seized item had a legitimate expectation of privacy in the area searched. United States v. Salvucci (1980), 448 U.S. 83, 91-92;100 S.Ct. 2547, 2553. See, also, State v. Hines (1993), 92 Ohio App.3d 163,166. One who illegally possesses or controls a vehicle does not have standing to challenge a search of the vehicle because he does not have a legitimate expectation of privacy therein. State v. Otte (1996), 74 Ohio St.3d 555, 559; 5 LaFave, Search and Seizure (1996) 179-180, Section 11.3(e).
Rideau argues that, as the owner of the Mazda, he had a reasonable expectation of privacy in the car and standing to challenge the search of the car. Rideau claims that his ownership interest can be inferred from Meeks' testimony at the suppression hearing that he had discussed the possibility of giving the car to her. Rideau discounts the evidence that a "Carlos Montano" was the registered owner of the Mazda because no one at the hearing "knew Montano's identity." Rideau also claims that his subsequent conviction showed that the trial court disbelieved the evidence that someone else owned the vehicle. Rideau further asserts that he would have had a legitimate expectation of privacy in the Mazda even if he had merely borrowed it from its owner.
We share Rideau's view that the owner of a car or one validly in possession of another's car has a legitimate expectation of privacy in the trunk of that car while it is being shipped from one place to another in the absence of any indicia that the person has abandoned his expectation of privacy. This view does not compel us to conclude, however, that Rideau had a legitimate expectation of privacy in the Mazda. Rideau bore the burden to show that he was the owner of the car or had a valid possessory interest in it. Meeks' testimony that Rideau had talked of giving the car to her was weak evidence, at best, that he had a valid possessory interest in the car given the deception that evidently pervaded Rideau's relationship with Meeks. Moreover, Rideau did not offer any explanation of his relationship to the registered owner of the car, Carlos Montano. The inability of anyone else to explain Montano's identity did not inure to Rideau's benefit where he bore the burden of establishing his connection with the vehicle.
Based on Rideau's failure to explain his relationship to the registered owner of the vehicle and the weakness of his other evidence of a valid possessory interest, the trial court reasonably concluded that Rideau had not established a legitimate expectation of privacy in the Mazda. Thus, the trial court did not err in finding that Rideau lacked standing to challenge the search of the vehicle.
The first assignment of error is overruled.
 II. EVIDENCE OF APPELLANT'S POSSESSION OF CONTRABAND WAS LEGALLY INSUFFICIENT FOR CONVICTION.
Rideau claims that the state failed to show beyond a reasonable doubt "both that he exercised dominion and control over the narcotics, and that he was aware that they were in the Mazda's trunk." In other words, he claims that no rational trier of fact could have concluded that he had constructively possessed the narcotics.
Sufficiency of the evidence "is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386, citing Blacks Law Dictionary (6 Ed. 1990) 1433. When considering the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Otte, supra, at 563, citing Jackson v.Virginia (1979), 443 U.S. 307, 319.
The state presented evidence that Rideau had orchestrated an elaborate plan to have the Mazda shipped from California to Ohio while concealing his ties to the vehicle. Specifically, Watson testified that she had been paid by Rideau to hire a common carrier to ship the Mazda and to deliver it to the carrier. According to Watson, her daughter saw Rideau leave the Mazda in the family's driveway, and Rideau's wife delivered money to cover the cost of the shipping along with several hundred dollars for Watson. Meeks testified that Rideau had instructed her to take delivery of the Mazda in Dayton and to notify him immediately of its arrival. Based on this testimony, a rational trier of fact could have found that Rideau had possessed or controlled the Mazda both in California and in Ohio. Having reached that conclusion, a rational trier of fact could have reasonably inferred that Rideau had knowledge of the narcotics in the car, especially in light of his extensive efforts to conceal his identity as the real shipper of the vehicle, police officers' testimony that the shipment of cars was a common way to transport illegal drugs, and the careful construction of the hidden compartment. Although Rideau claims that numerous other people had the opportunity to place drugs in the car, there is no suggestion that anyone else had an opportunity to construct a hidden compartment or to retrieve the drugs upon their arrival in Dayton. Thus, the evidence was sufficient to support Rideau's conviction.
The second assignment of error is overruled.
 III. OHIO WAS WITHOUT JURISDICTION, BECAUSE NO ELEMENT OF THE OFFENSE TRANSPIRED WITHIN OHIO.
Rideau contends that he did not possess drugs in Ohio because police officers had taken control of the drugs before they arrived in Ohio and had positioned themselves to intervene in any effort on his part to dispose of the drugs. Rideau also argues that he did not possess the cocaine in Ohio because his agent, Meeks, had had no knowledge of the cocaine and thus no ability to possess it, and that he could be imputed with no greater knowledge or control of the drugs than his agent.
It is undisputed that Rideau never physically possessed the cocaine in Ohio. His conviction was based upon a theory of constructive possession. Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. State v. Wolery (1976), 46 Ohio St.2d 316; State v.Williams (1996), 117 Ohio App.3d 488, 492. Constructive possession is established where an individual exerts dominion and control over an object through an agent. Williams, supra, at 493. One cannot escape criminal liability by acting through an agent.Id. at 493.
In our view, the fact that the police knew that drugs were in the Mazda and intended to intervene in any effort to remove them does not change the fact that Rideau had constructive possession of the drugs until the police actually seized them. Likewise, the fact that Meeks, by Rideau's design, had no knowledge of the cocaine in the Mazda when she took delivery of it does not change the fact that Rideau knew the drugs were in the car and was able to direct Meeks' use of the car. These facts supported a finding that Rideau had constructively possessed the drugs in Ohio.
The third assignment of error is overruled.
 IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY IMPOSING SENTENCE UNDER THE "PRIOR LAW," WHEN A STATUTE ENACTED SINCE THE COMMISSION OF THE OFFENSE REQUIRED A SUBSTANTIALLY REDUCED SENTENCE. THUS, THE TRIAL COURT DENIED APPELLANT DUE PROCESS, AS WELL AS EQUAL PROTECTION OF THE LAW.
Under this assignment of error, Rideau argues that he should have been sentenced pursuant to Am.Sub.S.B. No. 2 ("S.B. 2"), the sentencing provisions that became effective after his offense was committed but before his trial, and that the legislature's attempt to apply these provisions prospectively only was unconstitutional.
At oral argument, Rideau's attorney conceded that the Supreme Court of Ohio recently rejected his arguments related to the applicability and constitutionality of S.B. 2 in State v. Rush
(1998), 83 Ohio St.3d 53, and withdrew this assignment of error.
The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.
Copies mailed to:
Cheryl A. Ross
Roger J. Rosen
John H. Rion
Hon. Patrick J. Foley