OPINION
Appellant, Michael Fabian, appeals from the July 30, 2001 judgment entry of the Trumbull County Court of Common Pleas.
A Trumbull County Grand Jury presented a three-count indictment against appellant on March 15, 2001. Count one of the indictment was for knowingly obtaining, possessing, or using methamphetamine in an amount exceeding five times the bulk amount, but less than fifty times the bulk amount, a felony of the second degree, in violation of R.C. 2925.11(A) and (C)(1)(c); count two was for tampering with evidence, a felony of the third degree, in violation of R.C. 2921.12(A)(1) and (B); and, count three was for complicity to aggravated trafficking in drugs, a felony of the second degree, in violation of R.C. 2923.03(A)(2) and 2925.03(A) and (C)(1)(d).
A jury trial commenced on July 9, 2001. John Patrick Avery ("Avery"), a Drug Enforcement Administration ("DEA") special agent, testified that in January and February 2001, the Youngstown field office of the DEA received a series of anonymous tips regarding 47 Kings Drive, Newton Township ("47 Kings Drive"), a mobile home. The informant provided Avery with appellant's name, address, and the method for delivery of narcotics to appellant. Avery, in turn, contacted Joseph Long ("Long"), a United States Postal Inspector.
Long testified that Avery advised him that he suspected that drugs were being sent through the mail to 47 Kings Drive. Acting on the information provided by Avery, Long instructed employees of the Warren, Ohio post office to contact him if they discovered a package for that address that had been mailed from California. On February 6, 2001, Long was notified of such a package having arrived at the Warren post office.
Long contacted the DEA regarding the package, and Avery sent Kim Nusser ("Nusser"), a special agent with the Ohio Bureau of Criminal Identification, to the Warren post office. Nusser was the handler of a drug detection canine ("Dino"). Nusser testified that when he arrived at the Warren post office, he left Dino in his vehicle while he placed the suspect package in an area in the post office containing other parcels. He then brought in Dino, who identified the suspect package as containing narcotics.
Relying on the information provided by Nusser, Long obtained a search warrant. He then opened the package at the DEA office in Youngstown. The package contained a white powdery substance, which field tested as methamphetamine.[1]
After the substance tested positive, the law enforcement agents involved in the case decided to make a controlled delivery of the package. Most of the methamphetamine was removed from the package and retained by the DEA. A small amount of methamphetamine was placed back in the package along with a white powder substitute (possibly sugar or flour) for the methamphetamine that had been removed.
Long testified that as part of the controlled delivery, he dressed up as a mailman. He then drove a mail truck to 47 Kings Drive. With a DEA surveillance team in place, he knocked on the front door, and appellant answered. Appellant told him that the package was late and that it contained a check, which he was expecting. Appellant then signed for the package.
After Long had delivered the package to appellant, Avery and a team of law enforcement agents approached the front door of 47 Kings Drive. Avery knocked several times on the front door. As he knocked, in a loud voice he said: "Police, search warrant, demand entry." When no response was received, John T. Panezott ("Panezott"), a sergeant with the Salem Police Department, who was assigned to the Youngstown office of the DEA, used a battering ram to break open the door.
Panezott testified that when he hit the door with the ram, it immediately swung open. When he looked inside the residence, he saw appellant, "who looked kind of like a deer in the headlights." Appellant stared at him for a brief moment, and then ran down the hallway. Panezott lost sight of appellant.
Mark Crissman ("Crissman"), an officer with the Youngstown Police Department, was also part of the controlled delivery team. He was directly behind Panezott as they entered 47 Kings Drive. He testified that he entered the residence immediately after Panezott. He did not see appellant flee, but he saw Panezott enter a bedroom. Panezott turned to him, and his expression indicated that the bedroom was empty, so Crissman went into the bathroom. He found two individuals there: appellant and Clyde Dooley.[2] Appellant was leaning over the toilet. The toilet had just been flushed and was refilling. Appellant was subsequently arrested.
Stephen Rapp ("Rapp"), a DEA special agent, was also a member of the team of law enforcement agents who made the controlled delivery. Rapp searched the residence after appellant had been arrested. He testified that during this search, he discovered a recipe for the manufacture of methamphetamines in an ammunition box. Avery testified that law enforcement agents also recovered a set of Acculab digital scales and a set of Tanita digital scales from appellant's home.
At the close of the state's case, appellant moved the court for an acquittal pursuant to Crim.R. 29. The court denied the motion with respect to counts one and two of the indictment, but granted it with respect to count three. On July 13, 2001, the jury returned guilty verdicts on counts one and two.
In its July 30, 2001 judgment entry, the court sentenced appellant to prison terms of three years on count one, and one year on count two, with the sentences to run concurrently. Appellant has filed a timely appeal from this judgment entry and makes the following assignment of error:
 "The verdict of the jury as to count [one] of the indictment, aggravated possession of drugs, is not supported by the weight or sufficiency of the evidence where the testimony and exhibits produced at trial failed to show the defendant [sic] that the package mailed to him and received by him contained illegal drugs, when the court had earlier directed a verdict and dismissed count [three] of the indictment charging [appellant] with complicity to commit aggravated drug trafficking."
This court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 4, that "`[s]ufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." The test for sufficiency is after viewing the evidence in a light most favorable to the prosecution, there was substantial evidence from which the jury could reasonably conclude that the elements of the offense had been proven beyond a reasonable doubt. Id. at 5. The test for manifest weight is whether after weighing the evidence and all reasonable inferences therefrom, this court could conclude that the jury clearly lost its way in resolving conflicts in the evidence. Id.
R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." To charge appellant with a second degree felony for aggravated possession, the state also had to show that appellant possessed an amount of methamphetamine equal to or exceeding five times the bulk amount. R.C. 2925.11(C)(1)(c). Pursuant to R.C.3719.41, methamphetamine is a schedule II controlled substance. The bulk amount of a controlled substance containing any amount of a schedule II stimulant is three grams. R.C. 2925.01(D)(1)(g). The package intercepted by the DEA contained over thirty grams of methamphetamines, which was more than ten times the bulk amount of three grams set forth in R.C.2925.01(D)(1)(g).
The pivotal issue in this case is whether appellant knowingly possessed the methamphetamines that had been removed from the package at the Youngstown DEA office. In State v. Williams (1996), 117 Ohio App.3d 488,494, the First Appellate District held that:
 "* * * when law enforcement has intercepted a package and proves the original contents, and then substitutes a benign material, the relevant amount of contraband is that amount in the original package, and if the defendant possesses the package thereafter, a jury is entitled to conclude that the defendant constructively possessed the original contents of the package, not the substituted material."
In Williams, a postal inspector became suspicious about a package because the address on the package appeared to be a vacant house. After a drug detection canine gave a positive alert on the package, a federal search warrant was obtained for the package. Law enforcement agents discovered a substance containing cocaine that weighed just over a kilo and replaced it with a "dummy kilo." Defendant's agent subsequently inquired about the package at the post office and ultimately picked it up for the defendant. Id. at 491. The defendant then instructed his agent to give the package to "Charlotte." Id. Based on those facts, the court concluded that the defendant exerted dominion and control over the package and, therefore, had constructive possession of it. Id. at 493.
In State v. Saddler (Oct. 21, 1999), 8th Dist. No. 74218, 1999 WL 961500, at 1, a special agent of the Ohio Bureau of Criminal Investigation and Identification pulled a package being processed at a Federal Express terminal. A drug detection canine gave a positive alert to the presence of drugs in the package. Id. After obtaining a search warrant, law enforcement agents opened the package and discovered heroin and cocaine. Id. at 2. The narcotics were removed from the package and replaced with crumpled newspapers and magazines. Id.
A controlled delivery was made. Id. at 3. The package was addressed to Jean Brown. Id. When the DEA agent made the delivery, the appellant, Mark Saddler, identified himself as Jean Brown. Id. Approximately ten minutes after the delivery was made, a SWAT team secured the premises. Id. The package was found unopened on the kitchen table. Id.
The Eighth Appellate District declined to follow Williams because there was no evidence that the appellant exercised dominion and control over the package. Id. at 7. In holding that there was insufficient evidence for a jury to conclude that the appellant constructively possessed the cocaine and heroin removed from the package, the court noted that the package was not addressed to the appellant, the appellant never inquired about the package before it was delivered, nor did the appellant attempt to direct the delivery of the package. Id.
The facts of the instant case are distinguishable from those ofSaddler. First, the package was addressed to appellant. Second, appellant indicated to Long that he was expecting the package, stating that it was late and that it contained a check. Third, there was evidence that appellant disposed of the contents of the package when the controlled delivery team entered his residence, which fact supported an inference by the jury of guilty knowledge on the part of appellant. United States v.Jackson (C.A.6, 1995), 55 F.3d 1219, 1226. We would also note that instructions on the production of methamphetamine were found at appellant's residence.
In view of the foregoing, the holding in Williams is applicable to the facts of the case sub judice. Applying the holding in Williams, we conclude that there was substantial evidence from which a jury could conclude that appellant had knowingly possessed the methamphetamine, which had been removed from the package prior to the controlled delivery. The package was addressed to appellant, and the jury could readily infer from his behavior upon entry of the controlled delivery team that he had prior knowledge of the contents of the package, an inference buttressed by the fact that he was in possession of instructions for the manufacture of methamphetamine. We also conclude that the jury did not lose its way in resolving conflicts in the evidence and that its verdict was not against the manifest weight of the evidence.
We would make a cautionary statement with respect to the application of the holding in Williams to the instant case. In applying the Williams
holding, it is not this court's intention to establish a universal application of Williams to cases with similar fact patterns. We understand the implicit concerns of the Eighth District when it chose not to applyWilliams to the factual scenario presented in Saddler.
An individual motivated by animosity could mail prohibited narcotics to a completely innocent and unwitting victim. Such mailing, coupled with a contemporaneous anonymous phone call would set the stage for the arrest and prosecution of a law-abiding citizen. Our concern with respect to such a vindictive contrivance suggests that that the application ofWilliams will depend largely on the factual predicate presented. Thus, the holding in the case sub judice should not be read as conflicting with the decision reached by our Eighth District brethren in Saddler.
Further, it is the view of this court that when law enforcement officers have intercepted a package containing illegal narcotics, if they choose to make a controlled delivery of that package, they need not include any portion of the seized narcotics for the purpose of establishing the suspect's constructive possession of the narcotics under the holding in Williams.
Appellant's sole assignment of error is without merit, and the judgment entry of the Trumbull County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL, P.J., DIANE V. GRENDELL, J., concur.
[1] Erin Lucido, a forensic chemist at the DEA's North Central Laboratory in Chicago, subsequently conducted laboratory tests on the substance. He testified that he concluded from those tests that the substance was methamphetamine. The net weight of the methamphetamine in the package was 33.18 grams.
[2] Dooley was appellant's co-defendant, but was tried separately.