DECISION
{¶ 1} Defendant-appellant, Terrence M. Crawford, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding appellant guilty of two counts of aggravated robbery, four counts of robbery and two counts of kidnapping, all with firearm specifications.
 {¶ 2} The charges against appellant arose out of the robbery of Jesse Starcher and Clark Delaney on August 11, 2000, at the Blendon Hall Motel, located in Blendon Township, Franklin County. Starcher was the only victim to testify at trial. Starcher testified that at the time of the crime in 2000, he lived in Massilon, Ohio, and was in Columbus on a job assignment with his co-worker Delaney. The two checked into a two-room suite at the Blendon Hall Motel. After checking in, the two struck up a casual conversation with appellant, who was staying in a nearby room. Starcher and Delaney spoke with appellant for a while outside the motel room, and were subsequently joined by a female companion of appellant's, later identified as Michelle West. Delaney and appellant left in Delaney's truck to get beer, and Starcher spoke briefly with West before going back into his room to watch television. When Delaney and appellant returned, West was still sitting outside appellant's room. Appellant returned with Delaney and spent two or three hours in Starcher and Delaney's room drinking beer. Starcher testified that he was drinking coffee, but that he offered some of his marijuana to the others present. Starcher denied smoking any marijuana at that time.
 {¶ 3} Starcher testified that West and Delaney went to another room for a time, possibly an hour, and then returned, at which time appellant left. Starcher then fell asleep between 2:00 — 3:00 a.m. Prior to going asleep, Starcher had seen appellant speaking to someone in the parking lot. Starcher found this suspicious, and was concerned enough to sleep in his clothes with his shoes on in case of trouble. Delaney went to sleep in the second room of the motel unit.
 {¶ 4} Starcher was later awakened by two young men who burst into his room and demanded his wallet. Neither of these two was appellant, but one was the man Starcher had seen appellant speaking with in the parking lot. Starcher then observed appellant was standing in the doorway, shouting "give me the truck keys." Starcher assumed that this referred to the keys to Delaney's vehicle. The two other assailants began beating Starcher. He received a blow strong enough to stun him, and when he recovered he saw that Delaney had been forced into the bedroom and placed on the second bed. The men were striking both Delaney and Starcher, and attempting to fold a mattress over onto Starcher. At this time, one of the men had left the room briefly with appellant, and then returned with a gun. Someone was shouting "shoot him," Starcher testified, and one of the men held the gun near Starcher's head as if to shoot him through the mattress. Starcher yelled for help, struggled, and managed to break free. As he exited the room, shouting for help, his assailants also ran outside.
 {¶ 5} As they left, Starcher testified he observed appellant near Delaney's truck. Appellant and the two other assailants then jumped into a car and left. Starcher then went to a nearby restaurant and called the police. His wallet, containing about $300, had been taken.
¶ 6} On cross-examination, Starcher was questioned about discrepancies between his trial testimony and a written statement he had previously furnished to the police. In his prior written statement, Starcher reported being robbed by two men, not three. Starcher was initially unable to perform an in-court identification of appellant as one of his assailants, but had previously picked out appellant from a photo line up.
 {¶ 7} Detective John Belford of the Blendon Township Police Department was an investigating officer responding to the robbery report. He testified that he took witness statements at the scene, checked for fingerprints and took photographs. Surveillance was then established in the event that the suspects returned to the motel. Detective Belford was conducting the surveillance, when at 3:15 p.m., the day after the robbery, appellant and Michelle West approached the room where they had been staying the night before. Detective Belford spoke with each of them individually out of the presence of the other. Appellant admitted that he had spent several hours with Starcher and Delaney the night before, but denied participating in a robbery and in fact stated that he had gone to the pair's assistance when they were involved in an altercation with two young men. After this, Detective Belford testified appellant stated that he and West left by car and the two youths involved in the altercation left on foot.
 {¶ 8} After speaking separately with West, who gave him a different story, Detective Belford interviewed appellant again at the scene. Detective Belford testified that, during this second interview, appellant admitted to knowing the youths involved, which were identified as K and D, but were never positively identified. Referring to his notes, Detective Belford testified that West had told him that all four had left in the same automobile, and that when the three men got into the car, K and D began talking about the robbery but that appellant made no statements at that time indicating involvement himself. West also corroborated in her conversation with Detective Belford, regarding appellant's story that he had attempted to break up a fight between Starcher, Delaney, and the two youths. Detective Belford testified that no gun had been produced in his investigation.
 {¶ 9} Michelle West testified at trial after entering guilty pleas to reduced charges and agreeing to testify for the prosecution in exchange for dismissal of the remaining charges. She testified that her plea agreement called for a prospective sentence of six to eight months.
 {¶ 10} West testified that, at approximately 10:00 p.m. on August 10, 2002, she and appellant were sitting outside their room at the Blendon Hall Motel when they struck-up a conversation with Starcher and Delaney, who were outside their own room drinking beer. West testified that later all four went into Starcher and Delaney's room where they continued to drink beer and smoke marijuana. West denied being alone with Delaney at any point in the evening.
 {¶ 11} Later that night, K and D came to appellant's room to return a car they had borrowed from appellant and West. West testified that appellant knew the youths because he had purchased drugs from them in the past. She continued to watch television while appellant and the two youths sat across the room in conversation. It appeared to West that K and D were planning to rob Delaney and Starcher and although West had the impression that appellant would participate, she was unable to attribute to him any specific statements indicating his intent.
 {¶ 12} After this, West testified she went out to sit in the car. She saw the other three walk to Starcher's room and enter. After five minutes or less either Starcher or Delaney ran out calling for help, followed by appellant, K, and D, who got into the car. She drove off. As they drove, she heard the men discussing that $200 had been taken and that "one of them had a gun, and two of them beat up another guy in there." (Tr. 33.) Appellant and West dropped K and D off; as they were getting out of the car one of the two reached back to retrieve a small black gun. At no time in the evening did she see appellant in the possession of a gun.
 {¶ 13} Appellant testified on his own behalf. He stated that he first saw Delaney and Starcher as they were checking into the motel. He asked Delaney for a ride to the gas station down the street to buy beer. When they returned, West was sitting on Starcher's lap outside the room. The pair were talking and smoking marijuana. Appellant testified that while he went into Starcher's room and conversed with Starcher, West and Delaney retired to appellant's room. Appellant drank beer, smoked marijuana, and watched movies with Starcher. Eventually Delaney returned and told appellant it was time to go because Starcher and Delaney had to go to work in the morning.
 {¶ 14} Appellant testified that later in the evening he met K and D, who were interested in purchasing marijuana. Appellant directed them to Starcher and Delaney's room. Delaney then let the three into the room. As appellant spoke to Delaney, the other two went into the back room of the suite. Appellant testified that he then heard "a lot of fussing and cussing" from the next room. (Tr. 147.) When he went to investigate, one of the two youths pushed appellant and Delaney intervened. Appellant then left the room and went outside where West honked at him from the car and he went to join her. The two youths joined them and appellant and West dropped them off near West's home.
 {¶ 15} Appellant denied participating in any discussion of robbing Starcher and Delaney prior to the event. Appellant testified that he thought the two youths would simply buy marijuana from Starcher or Delaney and nothing more. Appellant denied demanding Delaney's keys, getting in Delaney's truck, or that he had seen a gun at any point in the evening. Appellant stated that he did not learn that a robbery had taken place until he was interviewed by Detective Belford the following day.
 {¶ 16} The jury returned a verdict of guilty on all counts and specifications. At the subsequent sentencing hearing, the court held that all counts and specifications would merge into the two aggravated robbery counts, based upon two different victims, and imposed concurrent seven-year sentences, with an additional three years on the firearms specifications.
 {¶ 17} Appellant filed an initial timely appeal to this court, which was dismissed by this court sua sponte after former appellate counsel failed to submit a brief. Appellant sought reopening under App.R. 26(B), which we granted, and counsel was appointed to pursue the appeal. Appellant now brings the following three assignments of error:
 {¶ 18} "[1] The court erred by failing to instruct the jury in accordance with R.C. 2923.03(D) that the testimony of the codefendant should be subject to grave suspicion and weighed with great caution.
 {¶ 19} "[2] Appellant's convictions were not supported by the evidence in that the evidence was insufficient to establish his involvement in the offenses charged. Furthermore, the court erred in overruling appellant's motion for acquittal pursuant to Criminal Rule 29 and conviction was against the manifest weight of the evidence.
 {¶ 20} "[3] Conviction on firearm specifications was not supported by the evidence and was against the manifest weight of the evidence."
 {¶ 21} Appellant's first assignment of error asserts that plain error occurred at trial when the court failed to give the instruction on accomplice testimony required by R.C. 2923.03(D). This issue is raised in connection with the testimony of Michelle West, who was originally named as a co-defendant in all counts of the indictment against appellant. As set forth above, prior to trial, West reached a plea agreement with the prosecution under which she was offered a reduced sentence in exchange for her testimony against appellant.
 {¶ 22} R.C. 2923.03(D) provides for the following instruction concerning testimony given under such circumstances:
 {¶ 23} "If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 {¶ 24} "`The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 {¶ 25} "`It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
 {¶ 26} It is undisputed in the present case that no comparable instruction was given to the jury. It is also undisputed that no objection to the absence of this instruction was made by trial counsel for appellant. Because no objection was made at trial, we consider the omission of the above instruction on accomplice testimony under the plain error standard. "If appellant did not raise a timely objection with respect to a jury instruction, we must engage in a plain error analysis pursuant to Crim.R. 52(B)." State v. Crowley, Franklin App. No. 02AP-235, 2002-Ohio-7366, at ¶ 17. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. "In order to constitute plain error, the error alleged must be obvious on the record, palpable, and fundamental such that it would have been apparent to the trial court without objection." State v. Tichon (1995),102 Ohio App.3d 758, 767. "Plain error will not be found unless the defendant establishes that the outcome of the trial clearly would have been different but for the trial court's error." State v. Waddell (1996), 75 Ohio St.3d 163, 166.
 {¶ 27} Failure to instruct a jury in accordance with R.C. 2923.03(D) was held by this court to warrant a reversal under the plain error standard, at least with respect to some of the charges against the defendant, in State v. McKinney (Mar. 6, 1990), Franklin App. No. 89AP-466. This is not to say, however, that the failure to instruct under R.C. 2923.03(D) should automatically give rise to a finding of plain error and consequent reversal, regardless of the nature of the charges or the other evidence heard at trial. We reversed in McKinney only upon those of the multiple charges against the defendant upon which the accomplice testimony was essential to the state's case, and the nature of the other evidence going to those charges was such that it could be doubted that conviction would have been obtained in the absence of the accomplice testimony. With respect to those crimes committed in McKinney independently of his accomplices, we found as follows: "[T]here is a sufficient amount of evidence in the record, independent of any accomplice testimony, which supports a conviction of these charges on appellant's action alone." McKinney, at 8.
 {¶ 28} Applying the rule in McKinney to the facts in the present case, we find that there is sufficient cause to find plain error with respect to all the charges against appellant, in the absence of the appropriate instruction on accomplice testimony with respect to the evidence given by Michelle West. While the testimony of the victim placed appellant in the motel room after it was broken into by the two principal assailants, K and D, and established that, at one point, appellant demanded car keys, apparently from Clark Delaney, Michelle West's testimony was not merely corroborative of this apparent participation by appellant in the robbery. West's testimony purported to place appellant in their motel room in the planning stages of the robbery with K and D. West's testimony also placed appellant in the car leaving the scene afterwards and dropping off K and D near her home. As is typical of accomplice testimony pursuant to a plea bargain, West's account of the robbery was given with every reason to minimize her own involvement and shift the blame to appellant. The probative weight of West placing appellant in the position of committing a premeditated robbery, rather than blundering into circumstances largely initiated by K and D, as seemed to be appellant's story at trial, must be considered.
 {¶ 29} The weight to be given to West's testimony was a critical aspect of any determination of appellant's culpability in the robbery, and it was equally critical to appellant's receiving a fair trial that the jury be properly instructed as to the caution that should be applied when weighing the testimony of an accomplice. The necessity of considering the testimony of an accomplice differently from that of other witnesses is emphasized not only in the mandatory jury instruction under R.C. 2923.03(D), but is also reflected in the preceding version of that statute, which did not require a comparable jury instruction but provided: "No person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence."
 {¶ 30} The prior version of the statute was judicially interpreted to apply both to complicity offenses and instances in which the defendant was charged as a principal. State v. Pearson (1980), 62 Ohio St.2d 291, syllabus. The courts strictly enforced the requirement of additional testimony beyond that of the accomplice: "In this day of plea bargaining and immunized testimony, and under such a statute, it is vitally important that one implicating an accomplice must do something more than point a finger." State v. Myers (1978), 53 Ohio St.2d 74, 75.
 {¶ 31} This caution applied to the weight given accomplice testimony at trial continues to be reflected in judicial interpretation of current R.C. 2923.03(D) and the accomplice testimony instruction: "The statutory directive is not optional. The legislative intent is to warn juries of the motivations that accompany accomplice testimony in a strong and uniform manner. Judges are not in a position to ignore such directives." State v. Williams (1996), 117 Ohio App.3d 488, 495.
 {¶ 32} We find that the present case is not one in which the other evidence presented at trial was of a nature, absent Michelle West's testimony, to make her testimony merely cumulative or corroborative. We conclude that a failure to properly weigh her testimony would have a significant impact in assessing appellant's guilt. We accordingly find plain error in the trial court's failure to give the mandatory jury instruction on accomplice testimony under R.C. 2923.03(D).
 {¶ 33} Appellant also argues that, even if plain error is not found, trial counsel's failure to object to the lack of the R.C. 2923.03(D) instruction constitutes ineffective assistance of trial counsel. In order to establish a claim of ineffective assistance of trial counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Strickland v. Washington (1984), 466 U.S. 668, 687-688,104 S.Ct. 2052, 1064-1065. A defendant must then establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability which is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 34} "* * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' " * * * Id. at 689, quoting Michel v. Louisiana (1955), 350 U.S. 91, 101,76 S.Ct. 158, 164.
 {¶ 35} For the same reasons given in finding error under the plain error standard, we are even more compelled to find error under the more lenient standard applicable to determining whether appellant received effective assistance of trial counsel. Clearly, the failure to request the appropriate instruction was not the result of any defensible tactical choice by trial counsel. No discernable strategy could support this choice. The possibility that the jury failed to properly weigh Michelle West's testimony is, on these facts, sufficient to undermine confidence in the outcome of the trial. We must therefore find that appellant did not receive effective assistance of trial counsel, and must be awarded a new trial on this basis as well.
 {¶ 36} For the foregoing reasons, we find that appellant's first assignment of error has merit and is sustained. Appellant's second and third assignments of error, relating to the manifest weight of the evidence, are rendered moot. The judgment of the Franklin County Court of Common Pleas is reversed, and the matter is remanded for a new trial.
Judgment reversed and remanded.
BOWMAN and TYACK, JJ., concur.