THE STATE OF OHIO, APPELLEE, *v.* JENNINGS, APPELLANT.

(No. C-870092—Decided
December 23, 1987.)

*Arthur M. Ney, Jr.,* prosecuting
attorney, *Paul R. Markgraf* and *Janna
H. Flessa,* for appellee.
*R. Scott Croswell III* and *Elizabeth
E. Agar,* for appellant.

BLACK, P.J. In this appeal, we
revisit the question of whether the
simultaneous transportation or posses-
sion of the two Schedule II controlled
substances is a single offense. We also
consider whether the transportation
and the possession of a single con-
trolled substance are allied offenses of
similar import in this case, and
whether the trial court should have
suppressed evidence that was seized
from a vehicle when the driver was
observed making a furtive movement
after the pursuing officers had ac-
tivated the siren and blue flashing
lights on the pursuing police cruiser. In
our disposition of the three assign-
ments of error, the last shall be first.

Defendant-appellant, David Jen-
nings (defendant) was arrested and
charged with four drug offenses. An
undercover police officer observed in
traffic an automobile that belonged to
one Aaron Pryor, who was wanted on
a felony drug warrant. The officer and
his supervisor called on two uniformed
police officers in a marked police
cruiser to stop the automobile, and all
four officers joined the chase. The
uniformed officers pulled in behind
Pryor's automobile and turned on the
siren and flashing blue lights. The
driver did not immediately pull over to
the curb and stop but continued on for
an appreciable distance (perhaps
several city blocks). One of the
uniformed officers saw the driver lean
forward and with his right hand fum-
ble with or push an unseen object
underneath or between the seats. All
four officers were at the scene when
the suspected automobile stopped. One
uniformed officer ordered the driver to
step out of the vehicle and to place his
hands on the automobile top, simul-
taneously telling an undercover officer
to look underneath or between the
front seats. The driver was patted
down and nothing of significance was
found on his person. Concurrently, the
undercover officer saw the corner of a
plastic bag between the seats, removed
it and found inside it a bundle of
numerous smaller packages (plastic
Ziploc bags) containing the drugs that
the defendant was charged with trans-
porting and possessing.

The driver was not Aaron Pryor,
as was first thought, but David Jen-
nings, the defendant in this case. Only
one of the four police officers knew
Aaron Pryor and realized that he was
not the driver at the moment when the
driver emerged from the vehicle and
stood up. The record is not clear when
that officer advised the others of this
fact.

The Ziploc bags contained various
quantities of Tylox, Percodan and co-
caine (as well as another drug that is
not "controlled"). The four counts of
the indictment charged defendant with
the following violations:

| Count | Substance | Schedule | Description of Offense | Statute |
|-------|-----------|----------|------------------------|---------|
| First | Percodan (Oxycodone) | II | Transportation | R.C. 2925.03(A)(2) |
| Second | Cocaine | II | Transportation | R.C. 2925.03(A)(2) |
| Third | Cocaine | II | Possession | R.C. 2925.11 |
| Fourth | Tylox (Oxycodone) | II | Possession | R.C. 2925.11 |

The principal ingredient of both Tylox and Percodan is oxycodone, which is listed as a controlled substance in Schedule II(A)(1)(n) of R.C. 3719.41. Physicians' Desk Reference (41 Ed. 1987) 906, 1199. We hold that the trade or commercial names of Tylox and Percodan are not significant and that the Tylox capsules and the Percodan tablets must be treated as one and the same Schedule II controlled substance.

After his arrest, the defendant admitted that he had been sent by Aaron Pryor in Pryor's automobile to a specific location to buy drugs for $800 in cash.

Defendant moved to suppress the substances seized in the automobile search and his post-arrest statement, for the reason that the arrest was not supported by probable cause. The motion was heard and overruled, and the case went to a jury trial. The jury returned guilty verdicts for all four counts, and the court imposed sentences on all four, as follows: consecutive sentences for the two possession violations (that is, the sentences under the third and fourth counts were ordered to be served concurrently with each other and concurrently with the sentences under the first and second counts).

In his third assignment of error, the defendant contends that the denial of his motion to suppress was erroneous, arguing that the recognition by one of the officers that the driver was not Aaron Pryor removed all justification for the warrantless search of the vehicle and the defendant's subsequent arrest and confession. We find no merit in this assignment of error. The furtive movement of the driver in a vehicle owned by a wanted fugitive, while being pursued by police who had turned on their siren and flashing lights, was amply sufficient to cause a reasonable person to take precautions for his own safety, irrespective of whether the driver was the wanted fugitive, an acquaintance of his, or a thief.

In his first assignment of error, the defendant argues that separate sentences for all four drug offenses were erroneous because all four were Schedule II controlled substances. In other words, he contends that the simultaneous possession (or other prohibited act) of Schedule II substances constitutes a single offense. This is the same argument that we considered and rejected in *State* v. *Jackson* (July 17, 1985), Hamilton App. Nos. C-840799 and C-840804, unreported. We held in that case that the simultaneous possession of Talwin (Schedule IV), Preludin (Schedule II) and cocaine (Schedule II) is neither a single offense nor a grouping of allied offenses of similar import.

In *State* v. *Jackson, supra,* seeking to understand the legislative intent in the absence of any clear statement in R.C. Chapter 2925 or 3719, we turned to the design or stucture of these two chapters. Our examination was made in conjunction with the presumptions, set forth in R.C. 1.47, that the legislature intends to comply with the

United States and the Ohio Constitutions, to make the entire chapters effective, and to accomplish a just and reasonable result feasible of execution. R.C. Chapter 2925 speaks in terms of "a controlled substance," a term defined as any one of those substances listed in Schedules I through V under R.C. 3719.41, 3719.43 and 3719.44. The substances are listed by their scientific names and afford a precise differentiation not only between the substances in different schedules but also between the substances in the same schedule. We believe each listed substance has an independent significance standing by itself, noting that the schedules have been amended pursuant to R.C. 3719.43 and 3719.44 by additions and transfers made by the United States Attorney General or by the Ohio State Board of Pharmacy.

The main purpose of grouping these identifiably harmful drugs in schedules is, we believe, to classify them for purposes of penalty, because in R.C. 2925.03(C), (D) and (E), the degree of the offenses ranges from felony of the first degree to minor misdemeanor and depends both on the schedule in which the drug in question is listed and on the amount involved in the offense.

We note that the legislature defined the offenses (possession or any other criminal act, such as sale, transportation, preparation for delivery, cultivation, etc.) in terms of "a" controlled substance, meaning any one controlled substance, rather than in terms of "any" controlled substance or "any controlled substances of the same schedule." R.C. 2925.03(A) and 2925.11. As we said in *State* v. *Jackson, supra,* at 5, treating each drug as having a significance independent of every other drug, even if in the same schedule, is just, reasonable, and feasible of execution, and "carries forward the overall legislative goal of ad-dressing and minimizing (if not eliminating) a major societal problem of our time."

The defendant contends that our interpretation was rejected by the Ohio Supreme Court in *State* v. *Delfino* (1986), 22 Ohio St. 3d 270, 22 OBR 443, 490 N.E. 2d 884, the syllabus of which reads: "The simultaneous possession of different types of controlled substances can constitute multiple offenses under R.C. 2925.11." The meaning of the syllabus is not clear to us, because "different types of controlled substances" can mean either those grouped in the five schedules or those separately listed in each schedule. An example of the latter meaning could be Tylox and Percodan, which are the *same* "type" in the sense they are different sources of oxycodone, the principal ingredient they have in common.

Turning to the exact point decided in *State* v. *Delfino, supra,* it was held that simultaneous possession of marijuana (Schedule I) and cocaine (Schedule II) constitutes two separate offenses. That decision is entirely consistent with *State* v. *Jackson, supra.* The defendant points to the fact that the Supreme Court went on to remark in *State* v. *Delfino, supra,* at 274, 22 OBR at 446, 490 N.E. 2d at 888, as follows:

"* * * This court specifically holds that possession of a substance or substances in Schedule I or II, with the exception of marijuana, is a single and separate offense under R.C. 2925.11 (C)(1). Possession of a substance or substances included in Schedule III, IV or V is a single and separate offense under R.C. 2925.11(C)(2). Possession of marijuana is a single and separate offense under R.C. 2925.11(C)(3)."

We do not assign a determinative significance to these remarks for two reasons: they were not necessary to

the precise point decided, and they were not incorporated in the syllabus.

We adhere to our position that simultaneous possession (or any other prohibited act) of more than one Schedule II controlled substance constitutes more than one offense. We find that other courts have come to the same conclusion. *State* v. *Ingram* (Mar. 31, 1987), Highland App. No. 600, unreported; *State* v. *Hearns* (Nov. 27, 1985), Summit App. No. 12093, unreported; *State* v. *Norman* (Aug. 15, 1985), Montgomery App. No. CA 8816, unreported. We overrule the first assignment of error.

In his second assignment of error, the defendant advances the argument that separate sentences (or convictions) for both the possession and the transportation of the same controlled substances were erroneous. It will be remembered that the only quantities of cocaine and of oxycodone were those in the Ziploc bags found between the front seats of the automobile the defendant was driving. There were no other quantities in the vehicle or on the defendant's person. Further, the only act of defendant prohibited by R.C. 2925.03(A)(2)[1] was the transportation of these substances; there was no proof, for instance, that he had prepared them for shipment or for distribution. Therefore this case is controlled by *State* v. *Roberts* (1980), 62 Ohio St. 2d 170, 16 O.O. 3d 201, 405 N.E. 2d 247, syllabus, wherein it was held that when charges of both sale and possession of drugs are based on a single transaction involving the same type and quantity of drugs, and the defendant did not possess any quantity in excess of the amount sold, the defendant may be indicted for both sale and possession, but can be convicted of only one offense under R.C. 2941.25 (A). In the instant case, the defendant can be sentenced for either possession or transportation of oxycodone (that is, Percodan and Tylox), not both, and for either possession or transportation of cocaine, not both. We find no error in the guilty verdicts, only in the sentencing.

The state points to the fact that the defendant did not raise the issue of double sentencing prior to the imposition of the sentences or otherwise call the matter to the trial court's attention, claiming that this court need not consider the error under *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364, vacated on other grounds (1978), 438 U.S. 911. We are not persuaded by this argument as applied to the unique circumstances of the instant case. *State* v. *Roberts, supra,* states a clear, unequivocal rule of law, and the facts of the instant case clearly fall within the rule (there being only one transaction and no quantity of drugs other than that quantity which was found in the defendant's possession in Pryor's vehicle). We hold it was plain error to impose separate sentences on both the transportation and the possession of the same controlled substances (even though the possession sentences were to run concurrently). *State* v. *Eiding* (1978), 57 Ohio App. 2d 111, 11 O.O. 3d 113, 385 N.E. 2d 1332; *State* v. *Craft* (1977), 52 Ohio App. 2d 1, 6 O.O. 3d 1, 367 N.E. 2d 1221; see, also, *Reichert* v. *Ingersoll* (1985), 18 Ohio St. 3d 220, 18 OBR 281, 480 N.E. 2d 802.

---

[1] R.C. 2925.03(A)(2) prohibits a number of acts. It reads in full:

"Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe such drug is intended for sale or resale by the offender or another[.]"

The second assignment of error has merit. We reverse the sentences imposed, without disturbing either the verdicts or the judgments of guilty (or the denial of the motion to suppress), and we remand this case for resentencing consistent with this opinion.

*Judgment accordingly.*

DOAN and HILDEBRANDT, JJ., concur.