DECISION AND JUDGMENT ENTRY
The Scioto County Court of Common Pleas convicted the appellant, Ruth Hunt Pitts, for drug trafficking, drug possession, and having weapons while under a disability. She raises four assignments of error for our review:
"ASSIGNMENT OF ERROR NO. 1:
 "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."
"ASSIGNMENT OF ERROR NO. 2
 "THE TRIAL COURT ERRED IN THE ADMISSION OF TESTIMONY AND EVIDENCE AT TRIAL AND IN REFUSING TO GRANT A MISTRIAL."
"ASSIGNMENT OF ERROR NO. 3
 "APPELLANT'S CONVICTION IS MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE AND MUST BE OVERTURNED."
"ASSIGNMENT OF ERROR NO. 4:
 "DEFENDANT-APPELLANT WAS IMPROPERLY CONVICTED OF OFFENSES AND SUBJECTED TO MULTIPLE PUNISHMENT FOR THE SAME CRIMES."
We agree that the trial court improperly imposed multiple sentences for seven of the weapons charges. We also agree that the jury's verdict concerning one of the weapons charges was contrary to the manifest weight of the evidence. We find no merit to any of the remaining assignments and therefore affirm her convictions in all other respects.
 I.
In May 1998, officials at the Southern Ohio Correctional Facility ("SOCF") in Lucasville suspected that one of its employees, Danny Chaffin, was smuggling drugs into the prison for inmate Ervin Triplett. Authorities obtained a search warrant for Chaffin's home and found a four-page letter from Triplett to Chaffin. The letter indicated that Chaffin had assisted Triplett with some unspecified business dealings. Triplett also urged Chaffin to perform one more task:
 "However, there was another package still there that you did not pick up, and that is all I want you to get. You can call ahead of time and that will be it. I can pay off the people whom [sic] have paid already, and work on something else. This I ask as a last request to conclude my dealings then I will be happy to quit with you — but complete this last transaction that's all! But this has to be done as soon as possible — I have already paid for this stuff and someone else has to — and the funds have been used already to [sic] I can't return them now — so now I owe them. And with this I'm asking for your help."
Officers also discovered the appellant's name, address, and telephone number written on a piece of paper. Chaffin explained that he was to pick up Triplett's package from the appellant, just as he had done on previous occasions. Chaffin agreed to cooperate with the officers' investigation by picking up the package and turning it over to them.
Based in part on the evidence and information received from Chaffin, Todd Bryant (a Portsmouth police officer and Southern Ohio Law Enforcement Drug Task Force investigator) secured a search warrant for the appellant's residence. The warrant described the residence to be searched as:
"A gray two story wood frame structure commonly known as 2213 7th Street[,] Portsmouth, Scioto County, Ohio. The residence is trimmed in white and has a chain link fence around the front. The residence has numbers 2213 located to the right of the front door.
"Any person found on said property and any vehicles found under the control of persons found on said property. Any garages, out buildings, curtilage of said property. All vehicles found on said property."
Before executing the warrant, the investigating officers sent Chaffin to the appellant's home to pick up Triplett's package. Chaffin took the package from the appellant and immediately delivered it to the officers for inspection. The package contained (1) eight baggies of marijuana totaling over two hundred grams, (2) seventy-five pills of diazepam, commonly known as valium, and (3) ten pills of alprazolam, commonly known as xanax. Valium and xanax are both schedule IV controlled substances. See R.C. 3719.41.
After inspecting the package's contents, officers executed the search warrant for the appellant's residence. The officers searched the appellant's dwelling house, three outbuildings located near the house, and a camper parked near the house. The camper and all searched structures were enclosed by a common fence. The search revealed over seven thousand grams of marijuana, most of which was stored in the various outbuildings, and scales and baggies commonly used for packaging marijuana. Officers also discovered nine weapons: seven handguns located in an outbuilding behind the appellant's house, a rifle in another outbuilding, and an SKS-type rifle located in the camper.
Based on these events, a grand jury returned a thirteen-count indictment against the appellant. The indictment alleged four drug-related charges: one count of marijuana trafficking (R.C.2925.03[A][3]), two counts of trafficking a Schedule IV controlled substance (R.C. 2925.03[A][2]), and one count of possessing marijuana in an amount in excess of 5,000 grams but less than 20,000 grams (R.C.2925.11[C][3][e]). The indictment also charged nine counts of having a weapon while under a disability (R.C. 2923.13[A][3]), one count for each of the guns found during the search. The appellant pleaded not guilty and moved to suppress all evidence found during the officers' search of her residence. The appellant argued that the camper and outbuildings searched by officers were not part of 2213 7th Street but, rather, were actually located on lots adjacent to this address. The trial court denied the motion and the case proceeded to a jury trial.
The jury ultimately found the appellant guilty of all but one of the charges alleged in the indictment; the jury acquitted the appellant on the weapons charge related to the SKS-type rifle found in the camper. The trial court sentenced the appellant to eleven months imprisonment for each of the drug trafficking counts, four years for the marijuana possession, and ten months for each of the weapons charges. The court further ordered the sentences to be served consecutively, with the exception of the weapons convictions, which would run concurrently with each other. The appellant filed a timely notice of appeal.
 II.
In her first assignment of error, the appellant contends that the trial court should have suppressed evidence seized during the officers' search of her home. Review of a trial court's denial of a suppression motion presents us with a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. The trial court acts as the trier of fact when deciding the motion and stands in the best position to resolve evidentiary conflicts and evaluate witness credibility. State v. Brooks
(1996), 75 Ohio St.3d 148, 154. We therefore defer to the trial court's factual findings so long as they are supported by competent, credible evidence. State v. Medcalf (1996), 111 Ohio App.3d 142, 145; State v.Guysinger (1993), 86 Ohio App.3d 592, 594. We then independently determine, without deference to the trial court, whether the court has reached the appropriate legal conclusion. State v. Anderson (1995),100 Ohio App.3d 688, 691; see, also, Ornelas v. United States (1996),517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911.
The appellant contends that the officers exceeded the scope of the search warrant for her home. The warrant commanded the officers to search "2213 7th Street" as well as "any garages, out buildings, curtilage" and vehicles found on that property. The appellant presented undisputed evidence that the outbuildings and camper were not located at 2213 7th Street; rather they stood at either 2211 or 2217 7th Street (lots adjacent to 2213 7th Street on either side) according to maps on file at the county recorder's office. The appellant therefore argues that evidence discovered in these areas should have been suppressed because the warrant authorized a search of only the dwelling house, the sole building actually located on 2213 7th Street.
In determining whether a search exceeded the scope of a warrant, the first inquiry is whether the place searched reasonably appeared to be the place described in the warrant. 2 LaFave, Search and Seizure (3 Ed.Supp. 1999) 72, Section 4.10, fn. 2.1. Thus, the touchstone of our inquiry is the reasonableness of the officers' search under the circumstances before them. See Maryland v. Garrison (1987), 480 U.S. 79, 87-88,107 S.Ct. 1013, 1018, 94 L.Ed.2d 72; State v. Ormsby (Mar. 8, 1991), Wood App. No. WD-89-75, unreported. In this case, we find nothing unreasonable about the search of the camper and outbuildings. Of all the structures searched, the dwelling house was the only one with a marked address. Further, the warrant authorized search of the outbuildings and any vehicles within the curtilage of the property. See United States v.Finnigin (C.A.10, 1997), 113 F.3d 1182, 1186 (vehicles and outbuildings within curtilage of a residence are within scope of search warrant, even if not specified). There was evidence indicating that a fence enclosed the dwelling house, outbuildings, and camper, giving the appearance that all of these areas were at 2213 7th Street. Moreover, there was evidence that electrical cords stretched from the dwelling to each of the outbuildings. Under these circumstances, the officers could reasonably conclude that the camper and outbuildings were part of the "curtilage" of 2213 7th Street and therefore within the scope of the search warrant. SeeState v. Tewell (1983), 9 Ohio App.3d 330 (defining "curtilage" as area adjacent and used in connection with a dwelling house).
The appellant alternatively argues that if the search warrant was meant to encompass the camper and all outbuildings, in addition to the dwelling house, then the warrant is invalid for failure to describe with particularity the places to be searched. Presumably, the appellant thinks the warrant should have clearly specified that any buildings on 2211, 2213, and 2217 7th Street would be searched. This argument is also without merit. A warrant's identification of the place to be searched is sufficient "`if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended.'" State v. Pruitt (1994), 97 Ohio App.3d 258, 261, quotingSteele v. United States (1925), 267 U.S. 498, 503, 45 S.Ct. 414, 416,69 L.Ed. 757, 760. Under this standard, we see no deficiency in the warrant. The essence of the warrant was an authorization to search the dwelling house and curtilage at 2213 7th Street. As we noted previously, there was compelling evidence to suggest that the outbuildings and camper were within the curtilage of the appellant's home. Moreover, the officer who submitted the affidavit in support of the search warrant assisted in executing it, rendering a mistaken search unlikely. Id. at 262; see, also, State v. Webb (July 19, 1993), Butler App. No. CA92-12-242, unreported. Given all of these factors, we find nothing wrong with the warrant's description of the premises to be searched.
The first assignment of error is overruled.
 III.
In the second assignment of error, the appellant challenges the trial court's admission of (and testimony concerning) state's exhibit 20, the letter from Triplett to Chaffin. The state used the letter in conjunction with witness testimony to establish that the appellant gave drugs to Chaffin as part of a conspiracy to sell drugs to SOCF inmates. The appellant argues that the document and all testimony about its contents were inadmissible hearsay and should have been excluded. She also argues that the evidence was unfairly prejudicial and that the trial court should have granted her motion for mistrial. We reject all of these contentions.
 A.
Generally, we will not disturb the trial court's decision to admit or exclude relevant evidence absent an abuse of discretion. See State v.Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. In the case of the Triplett-Chaffin letter, however, we must determine whether the document was hearsay within the meaning of Evid.R. 801. A trial court's discretion to admit or exclude relevant evidence does not include the discretion to admit hearsay; Evid.R. 802 mandates the exclusion of hearsay unless any exceptions apply. State v. Barney (June 7, 1999), Meigs App. No. 97CA12, unreported. Accordingly, we undertake a de novo
review of the trial court's interpretation of Evid.R. 801. Id.; see, also, State v. Sorrels (1991), 71 Ohio App.3d 162, 165; Smith v. Seitz
(July 9, 1998), Vinton App. No. 97CA515, unreported.
Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Exhibit 20 fits under this definition, as the state used the Triplett-Chaffin letter to prove matters asserted there, i.e. the existence of a scheme to have Chaffin pick up drugs from the appellant for delivery to Triplett. Evid.R. 801(C)'s definition, however, is subject to Evid.R. 801(D), which describes several types of statements that are not considered hearsay. Under Evid.R. 801(D)(2), a statement is not hearsay if it "is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." The state argued successfully at trial that this so-called "co-conspirator exception" to the hearsay rule applied to the Triplett-Chaffin letter.
Five conditions must be satisfied before a statement is admissible under Evid.R. 801(D)(2)(e). There must be a prima facie showing of (1) the existence of a conspiracy; (2) the defendant's participation in the conspiracy; (3) the declarant's participation in the conspiracy; (4) the statement being in furtherance of the conspiracy; and (5) the statement being made during the course of the conspiracy. See Gianelli and Snyder, Rules of Evidence Handbook (2000) 297, Authors' comment (K). The state must establish the first condition, the existence of a conspiracy, by way of independent proof, i.e. evidence apart from the statement itself.State v. Carter (1995), 72 Ohio St.3d 545, paragraph three of the syllabus. In this case, the state presented evidence, including letters from another SOCF inmate to the appellant, describing activity that officers believed to be drug-related. Further, Chaffin testified that he picked up packages from the appellant on more than one occasion for delivery to Triplett. Thus, there was evidence that the appellant participated in a drug trafficking operation that involved Triplett, Chaffin, and perhaps others in SOCF. Based on this evidence, we find there was a prima facie showing of a drug-trafficking conspiracy involving the appellant. Further, the letter and Chaffin's testimony concerning his dealings with the appellant and Triplett provide ample support for the conclusion that the remaining conditions for admissibility under Evid.R. 801(D)(2)(e) were satisfied. Exhibit 20 was therefore admissible non-hearsay under Evid.R. 801(D)(2)(e).
Notwithstanding Evid.R. 801(D)(2)(e) and evidence of her participation in drug-trafficking, the appellant argues that the state should not have been allowed to introduce the Triplett-Chaffin letter because neither the indictment nor the bill of particulars alleged a conspiracy. This argument is meritless. No conspiracy need be charged in order to admit evidence under Evid.R. 801(D)(2)(e). See State v. Robb (2000),88 Ohio St.3d 59, 68; 2 Gianelli Snyder, Evidence (1996) 51, Section 801.28.
 B.
Under this assignment of error, the appellant also argues that the trial court should have granted her motion for a mistrial because of the state's use of the Triplett-Chaffin letter. The decision to grant a mistrial is within the sound discretion of the trial court and we will not disturb its decision absent an abuse of that discretion. State v.Sage, supra, 31 Ohio St.3d at 182. Our review reveals no abuse of discretion by the trial court.
The appellant first complains that under Evid.R. 403(A), the prejudicial effect of the Triplett-Chaffin letter outweighed any probative value it may have had. However, Evid.R. 403(A) excludes relevant evidence only "if its probative value is substantially outweighed by the danger of unfair prejudice * * *." (Emphasis added.) Determining whether the probative value of evidence is substantially outweighed by unfair prejudice to the defendant is a matter left to the broad discretion of the trial court. See State v. Allen (1995), 73 Ohio St.3d 626, 636; State v.Maurer (1984), 15 Ohio St.3d 239, 264. We find no abuse of discretion by the trial court here. As we noted above, the letter was correctly classified as non-hearsay under Evid.R. 801(D)(2)(e) and was relevant to proving that the appellant knowingly sold controlled substances in violation of R.C. 2925.03. Although the appellant complains of the "prejudice" resulting from the letter, she makes no cogent argument about how the letter's probative value was substantially outweighed by the danger of unfair prejudice. Evidence is not "unfair" merely because it is detrimental to one side of the case. Accordingly, the appellant's argument for mistrial on this ground is without merit.
The appellant's next justification for mistrial focuses upon the prosecution's late disclosure of the Triplett-Chaffin letter to the defense. Despite the appellant's timely request for discovery under Crim.R. 16, the prosecutor did not disclose the Triplett-Chaffin letter until 3:41 p.m. on the Friday afternoon before trial was to begin the following Monday morning. Defense counsel made an oral motion in limine
to exclude the evidence and later moved for a mistrial due to the prosecution's late disclosure. The trial court overruled both motions despite the prosecution providing no explanation for its eleventh-hour disclosure of the letter.
The prosecution violated the spirit, if not the letter, of Crim.R. 16 by failing to disclose the Triplett-Chaffin letter until the eve of trial. The defense specifically requested copies of all documents "intended for use by the prosecuting attorney as evidence at the trial * * *." See Crim.R. 16(B)(1)(c). When faced with the state's failure to comply with a discovery request, the trial court has discretion in determining the appropriate sanction. State v. Soke (1995),105 Ohio App.3d 226, 245; see, also, State v. Horton (1993),90 Ohio App.3d 157, 160 (trial court has a "range of sanctions available," including exclusion of evidence and/or continuing the trial date). Although the trial court is not bound to exclude "surprise evidence," the trial court has a duty to inquire into the circumstances surrounding a discovery rule violation. Lakewood v. Papadelis (1987),32 Ohio St.3d 1, paragraph two of the syllabus. If a sanction is warranted, the trial court must impose the least severe sanction that is consistent with the purpose of the discovery rules. Id.
In this case, the trial court declined to sanction the prosecution when it denied the appellant's motion in limine to exclude the document. The state was then allowed to elicit testimony about the letter from its very first witness. When the defense renewed its objection during direct examination of that witness, the court's "sanction" was limited to the state's method of presenting the document:
 MR. BANKS [defense counsel]: Well, my first objection is, Your Honor, * * * I should have a right to talk to Mr. Chaffins [sic] or the person that authored this letter. Between Friday at the end of [the] business day we get this and we need to talk about the letter and what the contents says [sic]. It's kind of like, you know, how could I prepare for that?
 THE COURT: Alright [sic], I am not going to allow it since it got to him late, I am not going to allow it to be shown upon the screen. I will allow you to talk about the letter. You know about it now, you'll get an opportunity to investigate the letter, so to speak, and we'll let it be put up at a later time, but not at this time.
At no time, however, did the trial court require the prosecution to explain on the record why it did not disclose the letter to the defense until the Friday before trial. On the record before us, we can find no reasoned basis for such a minimal sanction in the face of the prosecution's unexplained failure to provide a document it (1) relied so heavily upon during trial, and (2) had possession of for over a year before trial. Although the trial court possesses a great deal of discretion in determining an appropriate sanction, it also has a mandatory responsibility to inquire into the circumstances surrounding an alleged violation of discovery rules. Papadelis at paragraph two of the syllabus. The trial court did not do that in this case and imposed a toothless "sanction" that did nothing to enforce the discovery rules.
Despite the prosecution's failure to comply with the discovery rules and the subsequent lack of an inquiry on the record, we find no error warranting reversal. Significantly, defense counsel never asked for a continuance; he sought only exclusion and then, later, a mistrial after the state offered evidence of the Triplett-Chaffin letter. A continuance may have blunted the impact of the late disclosure by enabling the defense to conduct its own investigation. By not seeking a continuance (which the trial court may have granted) and instead seeking a mistrial when the state presented evidence of the letter, the defense invited the prejudice of which it now complains. Cf. State v. Roberts (Mar. 11, 1999), Washington App. No. 98CA21, unreported (noting that defendant prejudiced himself by insisting on a mistrial rather than accepting a continuance when faced with an alleged discovery violation by prosecution). More importantly, we do not believe that the outcome of the trial would have been different if the letter was excluded from the trial. The state's main purpose in presenting the letter was to show that the appellant sold drugs as part of a scheme to smuggle them into SOCF. The remaining evidence, including Chaffin's testimony and the letters written by another SOCF inmate to the appellant, provided proof of these facts. Moreover, the appellant's mere act of giving the box of drugs to Chaffin on the day of her arrest supported a conviction for drug trafficking, regardless of whether those drugs were destined for SOCF. Thus, the Triplett-Chaffin letter, though relevant, was not the indispensable part of the case that the state apparently thought it was.
The second assignment of error is overruled.
 IV.
In her third assignment of error, the appellant contends that her convictions for the various offenses are against the manifest weight of the evidence. When considering this type of a claim, our task as a reviewing court is to assess whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193. We must examine the entire record, independently weigh the evidence and all reasonable inferences, and consider the credibility of witnesses, keeping in mind that weight and credibility of evidence are generally issues for the trier of fact to resolve. State v. Garrow (1995), 103 Ohio App.3d 368,371. We may reverse a conviction as being against the manifest weight of the evidence only if it appears that the trier of fact, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. We must uphold a conviction if there is substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense were established beyond a reasonable doubt. State v. Eskridge (1988),38 Ohio St.3d 56, paragraph two of the syllabus. Reversal is warranted for only those convictions that "fall into the category of the `exceptional case in which the evidence weighs heavily against conviction.'" State v. Lindsey (2000), 87 Ohio St.3d 479, 484, quotingThompkins, supra, 78 Ohio St.3d at 387.
In challenging the convictions for drug trafficking, the appellant complains that the jury "was permitted to infer that [she] was smuggling drugs into SOCF despite the fact that there was absolutely no evidence of same presented at trial." Thus, she contends that her convictions for drug trafficking should be overturned. We disagree. The appellant incorrectly assumes that the state needed to prove her involvement in drug-smuggling to secure a conviction. A defendant is guilty of drug trafficking when he or she "knowingly sell[s] or offer[s] to sell a controlled substance." R.C. 2925.03(A). The state presented testimony from Chaffin and two drug task force officers detailing Chaffin's controlled pick-up of drugs from the appellant. There was evidence and testimony showing that Chaffin (1) telephoned the appellant to schedule pick-up of a package, (2) went to the appellant's house, and (3) picked up a package from the appellant containing marijuana, valium, and xanax. This act of transferring the package of drugs constituted a completed offense of drug trafficking. See State v. Brownlow (1991),75 Ohio App.3d 88, 93 (trafficking conviction proper where evidence showed that defendant gave cocaine to state's witness); see, also, R.C.3719.01(AA) (defining "sale" of controlled substance to include any "delivery, barter, exchange, transfer, or gift, or offer thereof"). The appellant's convictions for drug trafficking are therefore supported by competent, credible evidence.
The appellant also challenges her conviction for marijuana possession as being against the manifest weight of the evidence. To properly convict the appellant on this charge, the state needed to prove that the appellant knowingly obtained, possessed, or used marijuana in an amount exceeding two hundred grams. See R.C. 2925.11(A) and (C)(3)(c). Even though police found more than seven thousand grams of marijuana in various locations throughout her residence, the appellant argues that the state did not adequately link the appellant to the drugs, particularly because other people had access to the areas where marijuana was kept. We are not persuaded.
R.C. 2925.01(K) defines "possess" or "possession" as "having control over a thing or substance, but [it] may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Contrary to the appellant's assertions, the state presented more than the appellant's "mere access through her occupation of the premises" as evidence of marijuana possession. As we previously explained, there was evidence and testimony showing that the appellant transferred a box containing controlled substances, including marijuana, to Chaffin a short time before the police officers searched the appellant's home. This transfer of marijuana, coupled with the appellant's occupation and control over the residence, supports a reasonable inference that the appellant controlled the marijuana found elsewhere on the property. Moreover, letters written from an SOCF inmate to the appellant contained references to the appellant's "books," which police officers testified was a common euphemism for marijuana among inmates. A taped phone conversation between the appellant and one of her sons, who was an inmate at SOCF, also contained references that police believed were euphemisms for marijuana. The jury therefore had substantial evidence tying the appellant to the marijuana found at her home.
Finally, the appellant argues there is no substantial evidence to support the appellant's convictions for having weapons while under a disability. R.C. 2929.13(A)(3) states that no person with a prior drug conviction "shall knowingly * * * have * * * any firearm or dangerous ordnance * * *." The appellant was admittedly convicted of a drug trafficking offense in 1987; however, she claims that she did not "have" any of the firearms found at her home so as to be properly convicted for violating R.C. 2923.13(A)(3). The appellant contends that the guns belonged to one of her sons, that they were merely stored in the outbuildings, and that she therefore did not "have" them.
The appellant emphasizes R.C. 2925.01(K)'s definition of "possess" to argue the absence of substantial competent, credible evidence to convict her for "having" weapons while under a disability. We note, however, that R.C. 2925.01's definitions do not apply outside the context of drug cases. State v. Galindo (July 9, 1999), Lucas App. No. L-98-1242, unreported; see, also, R.C. 2925.01 (defining the terms "[a]s used in this chapter"). In order to "have" a firearm within the meaning of R.C.2923.13(A), a person must have actual or constructive possession of it.State v. Hardy (1978), 60 Ohio App.2d 325, 327. Constructive possession exists when a person has dominion and control over the object, even if not in immediate possession of it. State v. Messer (1995),107 Ohio App.3d 51, 56, citing State v. Wolery (1976), 46 Ohio St.2d 316,329; see, also, State v. Gibson (1993), 89 Ohio App.3d 188, 191, andState v. Thomas (Oct. 11, 1996), Trumbull App. No. 95-T-5253, unreported (access plus ability to control weapon establishes possession). Thus, possession of a firearm in violation of R.C. 2923.13 may be inferred when the defendant has exercised dominion and control over the area where the firearm was found. State v. Walsson (May 1, 1996), Clermont App. No. CA 95-90-063, unreported; see, also, State v. Williams (Sept. 30, 1997), Franklin App. No. 97APA02-255, unreported.
Competent, credible evidence exists to support a conclusion that the appellant had dominion and control over the eight firearms she was convicted of possessing. It is not disputed that the appellant lived on the premises. Further, her son testified that although he owns the property on which officers found the weapons, the appellant "has control over it." Indeed, the appellant possessed a key to the outbuildings and camper searched by the police. Further, the appellant's son (and purported owner of eight of the nine guns found) testified that the appellant helped store seven handguns in one of the outbuildings. Thus, the appellant was partly responsible for the guns being on the property in the first place, supporting an inference that she had dominion and control over them. Despite these indicia of the appellant's "control," the appellant makes much of the fact that various other people had access to the property. This fact does not, however, justify a reversal of the jury's finding that the appellant constructively possessed the weapons. The guns were all found in buildings/structures that were located at her residence and for which she had a key.
The appellant also argues that one of the handguns found by officers was inoperable, thus precluding a conviction for that particular gun. Indeed, the definition of "firearm" as used in R.C. 2923.13 requires the firearm to be operable or readily capable of being rendered operable. See R.C. 2923.11(B)(1); Messer, supra, 107 Ohio App.3d at 55. The appellant focuses on Officer Bryant's testimony to argue that the state failed to prove that one of the .38 caliber Smith and Wesson handguns was operable. We agree. Officer Bryant testified that he test-fired each weapon found on the appellant's property, except a .38 caliber Smith and Wesson that was "a very old, rusty gun [that] I didn't feel safe test firing * * *." He also testified, in response to the question of whether the gun could be made operable, "I'm assuming it can." The state's testimony concerning the handgun identified as state's Exhibit 40 does not satisfy the burden of proof beyond a reasonable doubt in that there is no substantial evidence of operability.
We overrule the third assignment of error, except as it relates to state's exhibit 40.
 V.
In her fourth assignment of error, the appellant challenges the multiple prison terms imposed for drug trafficking and having weapons while under a disability. First, she contends that count two (trafficking in valium) and count three (trafficking in xanax) of the indictment allege conduct constituting "allied offenses of similar import" within the meaning of R.C. 2941.25 because both drugs are Schedule IV controlled substances. The appellant therefore argues that the court should have sentenced her on only one schedule IV trafficking offense. See R.C.2941.25(A). She similarly contends that the court improperly sentenced her on each of the eight counts of having weapons while under a disability because those offenses were allied. The appellant contends that these multiple prison terms violated R.C. 2941.25, and therefore the double jeopardy clauses of the Ohio and United States constitutions, by imposing cumulative punishments for the same offense. See State v. Rance
(1999), 85 Ohio St.3d 632, 634-635. We analyze the multiple drug trafficking convictions and the multiple weapons convictions separately and find that the appellant is only partially correct.
 A.
R.C. 2941.25 states:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses and the defendant may be convicted of all of them."
We reject the appellant's argument that the trafficking offenses in counts two and three of the indictment are "allied offenses of similar import" within the meaning of R.C. 2941.25(A). The Supreme Court has described R.C. 2941.25(A) as a codification of the "judicial doctrine of merger * * * which holds that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime." State v.Logan (1979), 60 Ohio St.2d 126, 131 (emphasis added, footnotes and internal quotations omitted). In determining whether crimes "merge" as allied offenses of similar import, courts compare the elements of the offenses in the abstract to determine whether the crimes correspond to such a degree that the commission of one crime will result in commission of the other. Rance at 638 and paragraph one of the syllabus. This analysis implies the existence of two separate criminal statutes. Statev. Larsen (1993), 89 Ohio App.3d 371, 376. In this case, however, the appellant's conduct of trafficking in xanax and valium constituted two violations of the same criminal statute, i.e. trafficking a schedule IV controlled substance in violation of R.C. 2925.03. R.C. 2941.25(A) does not prohibit cumulative punishments for multiple violations of the same statute and is therefore inapplicable in this case. See id.
Because R.C. 2941.25(A) does not apply, we must examine the appellant's conduct under R.C. 2941.25(B), which expresses the legislative intent to allow a defendant to be sentenced to cumulative punishments for multiple violations of the same statute. Id. at 375; see, also, State v.McClellan (June 27, 1991), Meigs App. No. 451, unreported. The relevant inquiry is whether the appellant's transfer of xanax and valium amounts to two separate offenses "or, in the words of the statute, whether appellant committed the acts separately or with a separate animus as to each." Larsen at 376; see, also, McClellan, supra; State v. Brock (June 26, 1998), Trumbull App. No. 96-T-5564, unreported. The appellant contends that simultaneously trafficking in two schedule IV drugs constitutes only one offense. We disagree.
R.C. 2925.03(A) states generally that: "No person shall knowingly sell or offer to sell a controlled substance." Thus, the gist of the offense is the sale of a "controlled substance," which is defined as any substance listed in Schedules I through V under R.C. 3719.41, 3719.43, and 3719.44. See R.C. 2925.01(A) and 3719.01(C). R.C. 2925.03(C) then provides for different penalties and distinct titles of the offenses depending on what type of drug is involved. The relevant subsection here is R.C. 2925.03(C)(2)(a), which provides that a person is guilty of "trafficking in drugs," a fifth-degree felony, if "the drug involved is any compound, mixture, preparation, or substance included in schedule III, IV, or V * * *." Significantly, the statutory language defines the offenses in terms of "a controlled substance" and "the drug involved," indicating an offense based on one controlled substance. The statute therefore suggests that each drug, even if in the same schedule as another drug sold at the same time, "has a significance independent of every other drug * * *." State v. Jennings (1987), 42 Ohio App.3d 179,182, citing State v. Jackson (July 17, 1985), Hamilton App. Nos. C-840799, C-840804, unreported. Under this interpretation, the appellant's sale of two different schedule IV substances constitutes separately-committed offenses for which multiple punishments may be imposed. See id. Our conclusion is bolstered by the rule that the specific identity of controlled substance involved must be alleged in the indictment and is considered an essential element of the crime. State v.Rees (Nov. 27, 1989), Gallia App. No. 88CA17, unreported, citing Statev. Headley (1983), 6 Ohio St.3d 475, 479; State v. Gough (Sept. 23, 1992), Licking App. No. 92-CA-34, unreported. Thus, the state's proof that the appellant sold valium would not have been sufficient to prove that she sold xanax, indicating that the offenses are separate and distinct.
The appellant cites State v. Delfino (1986), 22 Ohio St.3d 270, for the proposition that possessing two drugs from the same schedule can only result in one punishable offense. Delfino's lone syllabus paragraph states: "The simultaneous possession of different types of controlled substances can constitute multiple offenses under R.C. 2925.11." Delfino
dealt with drugs on different schedules and the precise issue addressed by the court was whether the simultaneous possession of marijuana and cocaine can constitute separate offenses under R.C. 2925.11. Id. at 272.Delfino was certified as being in conflict with State v. Stratton
(1982), 5 Ohio App.3d 228, which held that the simultaneous possession of three controlled substances in violation of R.C. 2925.11 involves one offense permitting only a single punishment. The Supreme Court used a comparison-of-the-elements analysis borrowed from Blockburger v. UnitedStates (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, to conclude that the legislature intended to have the simultaneous possession of drugs from different schedules constitute separate offenses. In doing so, it repudiated the Stratton analysis, which found a legislative intent to punish only the act of possessing drugs, regardless of the number of substances. See Stratton, 5 Ohio App.3d at 230.
The appellant construes the Delfino syllabus to imply that only the possession of drugs from different schedules can result in multiple offenses. She apparently reaches this conclusion by construing the affirmative statement that "simultaneous possession of different types of controlled substances [i.e. from different schedules] can constitute multiple offenses" to prohibit multiple convictions where all the drugs are different in identity but come from the same schedule. Acceptance of the premise in the Delfino syllabus does not deductively require acceptance of the appellant's conclusion, either logically or legally. We cannot adopt such a leap in logic and reject it out of hand as did our colleagues in Jennings, supra. Interestingly, appellant's counsel made this same argument to another court, which also rejected it, see Statev. Montgomery (Aug. 30, 1990), Franklin App. No. 89-AP-1355, unreported; yet he failed to cite this case in his brief.
Furthermore, we join Jennings in rejecting confusing language in the body of Delfino as the basis for appellant's position. The "possession of a substance or substances * * * is a single offense * * *" language found in the body of the opinion was not carried over into the syllabus and, at best, is dicta. See S.Ct.R.Rep.Op. 1(B). We do not read that language to mandate that simultaneous possession of two drugs from the same schedule is one offense. See State v. McDermott (1995), 72 Ohio St.3d 570, 574
("The syllabus of a Supreme Court opinion is not to be construed as being broader than the facts of that specific case warrant"); Love v. MotoristsMut. Ins. Co. (1993), 86 Ohio App.3d 394, 400 (syllabus of Supreme Court opinion states controlling point or points of law "decided in andnecessarily arising from the facts of the specific case" before the court [emphasis sic]). Accordingly, we adhere to the position that "different types" refers to different substances and that a defendant may be punished for selling more than one schedule IV substance. The trial court therefore did not err in sentencing the appellant to a prison term for trafficking in xanax and a separate prison term for trafficking in valium. But, see, State v. Pavlos (Apr. 28, 1988), Cuyahoga App. No. 53772, unreported (applying Delfino and Hedelsky without analysis to hold that simultaneous possession of two different drugs from same schedule is one offense).
 B.
The appellant offers the same "allied offenses" argument in challenging her convictions on all eight counts of having weapons while under a disability. As we noted previously, an "allied offenses" analysis under R.C. 2941.25 is not appropriate when assessing the propriety of multiple punishments for multiple violations of the same criminal statute. Rather, we must analyze whether the weapons offenses were committed separately or with a separate animus to determine whether they are eight offenses or only one. See State v. McClellan, supra.
R.C. 2923.13(A)(3) prohibits a person with a prior drug conviction from having "any firearm or dangerous ordnance * * *." The statute does not address whether simultaneous, undifferentiated possession of multiple firearms is one offense or multiple offenses. See State v. Woods (1982),8 Ohio App.3d 56, 60 (making same observation with similarly-worded R.C.2923.12, the concealed-weapons statute). Moreover, unlike the situation above involving drugs, the statutory language does not evince an intent to make each weapon the relevant unit of prosecution rather than the transaction of having the weapons. See State v. Hipple (May 21, 1999), Miami App. No. 98CA49, unreported. In other words, a defendant's simultaneous possession of several weapons in one location at one time is a continuous, indivisible act. Woods, supra, 8 Ohio App.3d at 60; accordState v. Foltz (June 28, 1999), Fairfield App. No. 98CA58, unreported. Thus, the simultaneous, undifferentiated possession of weapons by a person under a disability constitutes only one offense and not separate offenses for each weapon. State v. Thompson (1988), 46 Ohio App.3d 157,159; cf. State v. Jones (May 15, 1991), Washington App. No. 89CA23, unreported (following Woods and Thompson to hold that simultaneous possession of multiple firearms in motor vehicle was one offense under R.C. 2923.16[B]).
In this case, the appellant was convicted for eight separate counts for eight different weapons. The record shows that seven of these weapons (all of them handguns) were found in the same location, viz. inside a "pink purse" in an outbuilding directly behind the appellant's dwelling house. The appellant's possession of these handguns was simultaneous and undifferentiated and could therefore constitute only one offense. Absent some evidence that she acquired or placed them there at different times, the trial court should have sentenced the appellant on only one violation of R.C. 2923.13 for the seven handguns alleged in counts seven through thirteen of the indictment.
The trial court did not err, however, in sentencing the appellant for illegally possessing the .22 caliber rifle (count five of the indictment). The evidence established that officers found the rifle in a different outbuilding from the other guns. Because the weapon was in a different location, we cannot characterize the appellant's possession as being "simultaneous and undifferentiated." Having the rifle while under a disability was therefore a separate offense from having the handguns. SeeState v. Carna (Aug. 19, 1992), Washington App. No. 91CA32, unreported;State v. Herda (Apr. 21, 1997), Licking App. No. 96CA00127, unreported.
 VI.
We sustain the third assignment of error as it relates to the conviction for the weapon identified as state's Exhibit 40. We sustain the fourth assignment of error as applied to the appellant's convictions for eight counts of having weapons while under a disability. The appellant was properly convicted on only two of these counts because there were only two separate offenses committed. We therefore reverse the appellant's convictions on counts seven through thirteen of the indictment. In all other respects, we affirm the judgment of the trial court and remand the case for re-sentencing in accordance with this opinion.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED IN PART AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment Only.
Evans, J.: Concurs in Judgment and Opinion as to Assignments of Error 1, 2, and 4, as well as Assignment of Error 3 Drug Charge. Dissents as to Assignment of Error 3 Gun Charge.
 ________________________ William H. Harsha, Judge